[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2008
THOMAS K. KAHN
CLERK

No. 07-12950
Non-Argument Calendar
_____

D. C. Docket No. 06-20609-CR-RWG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO AGUERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 16, 2008)**

Before TJOFLAT, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Ricardo Aguera appeals his 121-month sentence for conspiracy to solicit and

receive kickbacks in violation of 18 U.S.C. § 371 and four counts of soliciting and

receiving kickbacks involving a federal health care program in violation of 42

U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. § 2. On appeal, Aguera initially argues that

the district court erred in finding him responsible for the entire amount of loss to

Medicare resulting from the conspiracy. He maintains that he did not design or

execute the scheme, pool profits or resources with his co-conspirators, or work

with them. He asserts that he cannot be held accountable based on his mere

awareness of the scope of the overall operation.

We review the district court's interpretation of the sentencing guidelines <u>de

novo</u> and its factual findings for clear error. <u>United States v. Masferrer</u>, 514

F.3d 1158, 1164 (11th Cir. 2008). Section 2B4.1 of the Sentencing Guidelines,

which applies to offenses involving commercial bribery, requires the district court

to increase the offense level if the value of the bribe or the improper benefit

exceeds $5,000. U.S.S.G. § 2B4.1(b)(1). Under U.S.S.G. § 1B1.3(a)(1)(B), "the

district court may hold participants in a conspiracy responsible for the losses

resulting from the reasonably foreseeable acts of co-conspirators in furtherance of

the conspiracy." <u>United States v. Hunter</u>, 323 F.3d 1314, 1319 (11th Cir. 2003).

To determine the limits of sentencing accountability, the district court must first

make individualized findings concerning the scope of the criminal activity

undertaken by a particular defendant.  Id.  It may consider "any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others" in determining the scope of the agreement.  Id. at 1319-20.  Second, it must determine whether the conduct was "(1) in furtherance of the jointly undertaken criminal activity[] and (2) reasonably foreseeable in connection with that criminal activity."  Id. at 1319.

In determining whether activity is jointly undertaken, a court may consider whether the participants pool resources, such as sharing lead sheets of potential victims and telephones.  United States v. Hall, 996 F.2d 284, 285-86 (11th Cir. 1993) (per curiam).  Another relevant factor is "whether the defendant assisted in designing and executing the scheme."  Hunter, 323 F.3d at 1321.  However, a defendant's mere awareness of the scope of the overall operation is not enough to hold him accountable for the activities of the entire conspiracy.  Id.

The illustrations appended to U.S.S.G. § 1B1.3 provide guidance in determining whether a defendant should be accountable for his co-conspirator's actions.  Id.  One illustration follows:

> Defendant K is a wholesale distributor of child pornography.
> Defendant L is a retail-level dealer who purchases child pornography
> from Defendant K and resells it, but otherwise operates independently
> of Defendant K.  Similarly, Defendant M is a retail-level dealer who
> purchases child pornography from Defendant K and resells it, but
> otherwise operates independently of Defendant K.  Defendants L

and M are aware of each other's criminal activity but operate independently. Defendant N is Defendant K's assistant who recruits customers for Defendant K and frequently supervises the deliveries to Defendant K's customers. Each defendant is convicted of a count charging conspiracy to distribute child pornography. Defendant K is accountable . . . for the entire quantity of child pornography sold to Defendants L and M. Defendant N also is accountable for the entire quantity sold to those defendants . . . because the entire quantity was within the scope of his jointly undertaken criminal activity and reasonably foreseeable.

U.S.S.G. § 1B1.3, comment. (illus. (c)(4)).

In United States v. Studley, 47 F.3d 569 (2d Cir. 1995) (persuasive authority), the Second Circuit vacated the sentence of a salesman who participated in a fraudulent telemarketing scheme, which secured application fees by false representation. Id. at 570. Because Studley did not design or develop the telemarketing scam, further the scheme outside of his individual sales efforts, pool profits with the overall operation, assist other representatives with sales, or share resources with his co-conspirators, that circuit concluded that "[he] had no interest in the success of the operation as a whole, and took no steps to further the operation beyond executing his sales." Id. at 576. Similarly, the court Hunter vacated the sentences of several "runners" recruited by a ring of counterfeiters to cash counterfeit checks at various banks. Hunter, 323 F.3d at 1316-17. We noted that the runners' mere knowledge of the larger check-cashing ring could not make them accountable for the activities of the entire conspiracy. Id. at 1321. Further,

4

the government failed to "present[] any evidence of sharing or mutuality from which an agreement in the larger scheme [could] be inferred." Id. at 1322.

By contrast, in United States v. McCrimmon, 362 F.3d 725 (11th Cir. 2004), we affirmed the district court's finding that the entire loss caused by a money laundering scheme properly was attributed to the defendant because he "was fully aware of the objective of the conspiracy and was actively involved in recruiting investors to further the . . . scheme." Id. at 732. The scheme was "dependent upon [McCrimmon's] success in increasing the entire pool of money that could be redistributed to investors as interest payments, or pocketed by the other conspirators." Id. (internal quotations omitted). Although he did not design the scheme, McCrimmon "concocted a method in which he could continue to put investors into the program and further the scheme" and "was certainly not a low-end operative merely aware that he was participating in some sort of criminal ring." Id. at 733.

Because the evidence established that Aguera recruited accomplices in furtherance of the conspiracy and participated in the scheme, with full knowledge of its nature and scope, the district court did not err in finding him responsible for the entire amount of loss caused by the conspiracy. While Aguera did not design the scheme or pool resources with other DME companies, he furthered the

conspiracy by aiding Gonzalez and Rodriguez in their effort to recruit DME companies. He also made their scheme significantly more profitable by recruiting nearly 200 patients to participate in the conspiracy. The criminal activities of the other DME companies were reasonably foreseeable because Aguera observed the extensive list of participating DME companies in the log book when he signed in to retrieve his kickbacks every month.

Aguera's reliance on Hunter and Studley is misplaced because those defendants, unlike Aguera, did not recruit participants to expand the overall conspiracy. Further, Aguera's attempts to distinguish McCrimmon fail. While the scheme may not have depended on Aguera's individual success, Gonzalez testified that the scheme depended on the ability of the individual DME companies to recruit Medicare eligible patients. Therefore, by recruiting additional DME companies and nearly 200 patients, Aguera significantly increased the likelihood of success for both Gonzalez and Rodriguez. Although Aguera did not design the scheme or pool profits with other DME companies, such a finding is not necessary when a defendant recruits accomplices in furtherance of the entire conspiracy and participates in the scheme. See U.S.S.G. § 1B1.3, comment. (illus. (c)(4)). Thus, the district court did not err in finding that Aguera was accountable for the entire amount of loss caused by Gonzalez and Rodriguez because it "was within the

scope of jointly undertaken criminal activity and reasonably foreseeable." Id.

Aguera also argues that the district court erred in finding that he was a leader or organizer in the conspiracy, warranting a four-level role enhancement under U.S.S.G. § 3B1.1(a). He asserts that he played a small role in the overall scheme because he did not share profits with his co-conspirators, participate in the part of the essential operations of the scheme, or design, plan, or organize the scheme.

The Sentencing Guidelines provide for an increase in the offense level based on the defendant's role in the offense. U.S.S.G. § 3B1.1. Section 3B1.1(a) provides a four-level enhancement when a defendant plays an organizational or leadership role. Id. The enhancement is appropriate when the criminal activity involves five or more participants or when the defendant's role is "otherwise extensive." United States v. Holland, 22 F.3d 1040, 1045 (11th Cir. 1994). Section 1B1.3 of the Guidelines defines the relevant conduct to be considered in determining a defendant's role under U.S.S.G. § 3B1.1. Id. Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," "occurr[ing] during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid

7

detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).

The district court should consider the following factors in determining a leadership and organizational role:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4). The defendant need not be the sole leader or kingpin of the conspiracy to merit enhancement. United States v. Rendon, 354 F.3d 1320, 1332 (11th Cir. 2003). However, application of the section "requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." United States v. Yates, 990 F.2d 1179, 1182 (11th Cir. 1993).

The district court did not err in applying a four-level role enhancement pursuant to U.S.S.G. § 3B1.1(a), because Aguera exerted control over the conspiracy and recruited accomplices. The evidence established that Aguera exercised a degree of control over the conspiracy and recruited accomplices, including his codefendants and nearly 200 patients. While Aguera did not have a right to receive a larger share of the Medicare reimbursements, Gonzalez and Rodriguez split the payments in half with the DME companies. Although he did

8

not manage operations as a pharmacy owner like Gonzalez and Rodriguez, Aguera had direct control over the organization and management of his DME company and its methods of patient recruitment. Gonzalez testified that DME companies were necessary to accomplish the scheme because they controlled the flow of patients to the pharmacies. Thus Aguera, as DME owner and operator, had direct control and influence in the scheme's success.

Finally, Aguera argues that the district court plainly erred by applying U.S.S.G. § 2B4.1 rather than U.S.S.G. § 2B1.1 in calculating the base offense level. He maintains that the ultimate purpose of the scheme was fraud rather than bribery and contends that the error was plain, affected his substantial rights, and affected the fairness and integrity of the judicial process because it resulted in a higher base offense level.

Where a defendant raises a sentencing objection for the first time on appeal, we review for plain error. United States v. Dorman, 488 F.3d 936, 942 (11th Cir), cert. denied, 128 S.Ct. 427 (2007). Under this standard, the defendant first must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). An error is plain if it is "'obvious' and 'clear under current law.'" United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999). Clear under current law

means that "at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this [Circuit] directly resolving it." United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) (citation omitted).

The substantive offense in this case is 42 U.S.C. § 1320a-7b, soliciting and receiving kickbacks involving a federal health care program. The Statutory Index lists two possible guidelines for that offense, U.S.S.G. §§ 2B1.1 (larceny) and 2B4.1 (commercial bribery). U.S.S.G. app. A, at 537. If more than one section is referenced for a particular statute, the sentencing court should use the section "most appropriate for the nature of the conduct charged." United States v. Starks, 157 F.3d 833, 841 (11th Cir. 1998).

Section 2B1.1 of the Guidelines applies generally to (1) larceny, embezzlement, and other forms of theft, (2) offenses involving stolen property, (3) property damage or destruction, (4) fraud and deceit, (4) forgery, and (5) offenses involving altered or counterfeit instruments other than counterfeit bearer obligations of the United States. U.S.S.G. § 2B1.1. On the other hand, U.S.S.G. § 2B4.1 applies to bribery in the procurement of a bank loan and other commercial bribery. U.S.S.G. § 2B4.1.

Because any error was not clear under current law, the district court did not

10

plainly err in applying U.S.S.G. § 2B4.1 rather than U.S.S.G. § 2B1.1 to determine Aguera's base offense level.

**AFFIRMED.**[1]

---

[1] Aguera's request for oral argument is denied.