[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2008
THOMAS K. KAHN
CLERK

No. 07-14869
Non-Argument Calendar

_____

D. C. Docket No. 06-00082-CR-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEXIS MENDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 30, 2008)**

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Alexis Mendez appeals his 180-month sentence of imprisonment for

possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii).  On appeal, Mendez argues first that the sentence violated the Eighth Amendment because it was grossly disproportionate to the criminal offense, in light of his mental health problems.  Second, he argues that the sentence was procedurally and substantively unreasonable because the district court failed to consider his arguments regarding mental illness, articulate how it considered his mental illness, or reduce the sentence to account for his mental illness.  We conclude that the sentence did not constitute cruel and unusual punishment in violation of the Eighth Amendment because it was not grossly disproportionate to the offense of conviction.  Even assuming that Mendez's mental health problems may be considered in the narrow proportionality analysis, the sentence did not violate the Eighth Amendment, especially in light of Mendez's criminal history.  Second, the sentence was procedurally and substantively reasonable because the district court considered Mendez's argument regarding his mental health problems, considered the other relevant 18 U.S.C. § 3553(a) factors, including his criminal history, adequately explained its reasons for imposing the sentence, and did not abuse its discretion in weighing his mental health problems and the other factors.  Accordingly, we AFFIRM.

2

# I. BACKGROUND

In July 2006, a federal grand jury returned an indictment against Mendez, charging him with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii). Mendez initially pled not guilty to the charge and moved for a competency hearing. A magistrate judge granted the motion for a competency hearing and ordered Mendez to undergo a competency evaluation. Following the competency evaluation, the magistrate judge held a competency hearing on 19 March 2007. After hearing testimony from Dr. Jorge Luis and Dr. Barbara Palomino de Velasco, both of whom evaluated Mendez's competency, the magistrate judge found that Mendez was competent to proceed. The district judge adopted the magistrate's competency recommendation over Mendez's objections. Mendez subsequently changed his plea to guilty. At the change-of-plea hearing, Mendez asked the court if it could give him an injection "[s]o you can kill me, because I want to die already." R3 at 27.

According to the Presentence Investigation Report ("PSI"), Mendez was speeding on a Florida highway on 6 July 2006, which led a Florida Highway Patrol Officer to conduct a traffic stop. During the stop, Mendez consented to a search of the vehicle he was driving, and the officer found a bag containing 18 baggies of

3

cocaine powder, which weighed 503.4 grams. When Mendez learned that he was under arrest, he fled on foot, dove into a canal, and swam across, but was eventually apprehended. Mendez was on bond at the time for a drug charge in Tampa. Following the arrest, he admitted that two men hired him to drive to Miami to pick up the cocaine and deliver it to Tampa. He further admitted that he had conducted the same delivery about 50 times, each time transporting about a half-kilogram of cocaine. Authorities seized two receipts from Mendez indicating that he made two wire transfers of money, in the amounts of $1,700 and $1,000, to a man in Miami, which Mendez indicated he had done at the behest of one of the men who hired him to transport the cocaine.

The PSI reflected that Mendez had an extensive criminal history dating back to 1981. This included convictions in the 1980s for: (1) carrying a concealed firearm; (2) petit theft; (3) burglary of a structure; (4) grand theft; (5) burglary; (6) manslaughter; (7) possession of cocaine; (8) disorderly conduct; (9) trespass on property; and (10) two separate convictions for both carrying a concealed firearm and possession of a firearm by a felon. In the 1990s, Mendez was convicted for: (1) obtaining property for a worthless check; (2) burglary of a structure, grand theft, and obstruction with violence; (3) battery; (4) no vehicle registration; (5) fleeing and eluding a police officer, no valid driver's license, and obstruction

4

without violence; (6) resisting an officer without violence; and (7) possession of cocaine and escape from police custody. A 2005 charge for cocaine trafficking also was pending against Mendez.

The PSI further indicated that Mendez was born in Cuba in 1958, and he was in and out of mental health facilities in Cuba until 1980, when the government released him and he came to the United States. Dr. Palomino de Velasco conducted a mental health evaluation of Mendez on 18 October 2006, following his arrest on the instant charge, and she found that he was incompetent for trial and would benefit from long-term treatment in a secure environment. Pursuant to the district court's competency-evaluation order, Dr. Luis conducted a evaluation of Mendez from 28 November to 27 December 2006. Luis's competency report was included with the PSI, and it detailed Mendez's psychiatric history. Records indicated that Mendez underwent mental health evaluations when serving sentences within the Florida Department of Corrections ("DOC"). Although Mendez had denied having a mental health history during a 1998 evaluation, during his DOC incarcerations, the last of which ended in February 2002, he was diagnosed with depressive disorder, psychotic disorder, adjustment disorder, antisocial personality disorder, and several substance abuse disorders. He received antidepressant and antipsychotic medications during his Florida DOC

5

incarcerations, but that treatment was discontinued about a year prior to his 2002 release. In 1999, Mendez engaged in self-injurious acts such as inflicting on himself superficial lacerations and swallowing a metal badge clip.

The PSI further indicated that Mendez was incarcerated in the federal Bureau of Prisons from 1991 to 1994 and 2003 to 2004, and during those periods he denied having any mental health problems and did not receive any psychiatric diagnoses or psychotropic medications. While at the Miami Federal Detention Center, on 22 December 2006, a psychiatrist diagnosed Mendez with schizoaffective disorder and prescribed him antidepressant and antipsychotic medications. Dr. Luis found in his report that there was no evidence that Mendez was experiencing an active phase of any serious mental illness, and he was competent to continue with the criminal proceedings. Later, on 14 March 2007, at a Florida county jail, Mendez was put on suicide watch because he had suicidal thoughts. Mendez also indicated that he suffered from audio and visual hallucinations, and his family had a history of mental illness.

The PSI initially assigned Mendez a base offense level of 34 under U.S.S.G. § 2D1.1, because he was accountable for at least 25 kilograms of cocaine. He was entitled to a 3-point reduction based on his acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), which resulted in an adjusted offense level of 31.

6

Mendez, however, qualified for the career-offender enhancement under U.S.S.G. § 4B1.1 because of his prior convictions for obstruction with violence and escape from police custody. The PSI applied an enhanced base offense level of 34 because the applicable statutory maximum sentence was 40 years of imprisonment. After the 3-level reduction for acceptance of responsibility, his total offense level remained at 31. His criminal history category was VI, which combined with his offense level of 31 to yield a Guidelines imprisonment range of 188 to 235 months. The statutory minimum and maximum range of imprisonment for Mendez's offense was 5 to 40 years. The PSI noted that a diminished-capacity departure under U.S.S.G. § 5K2.13 might apply.

Mendez objected to the PSI and argued that he should qualify for the diminished-capacity reduction under § 5K2.13, and he should receive a downward variance according to the 18 U.S.C. § 3553(a) factors because of his history of mental illness, among other mitigating factors. He also objected that he should not be held responsible for 25 kilograms of cocaine because his statements about prior cocaine deliveries were not reliable.

At sentencing, the district court initially considered and overruled Mendez's objection that he should not be held responsible for 25 kilograms of cocaine. R4 at 5-9. The court then adopted the basic PSI Guidelines calculations, finding that his

adjusted offense level of 31 and criminal history category of VI resulted in a Guidelines imprisonment range of 188 to 235 months. Id. at 9. Next, the court addressed Mendez's argument that he was entitled to a departure for diminished capacity under § 5K2.13. Counsel for Mendez argued that, based on Mendez's long history of various mental problems he should qualify for the downward departure. In support of this argument, counsel called attention to Mendez's mental health diagnoses, prescribed medications, act of fleeing the police prior to his arrest in this case, and his request for lethal injection at the change-of-plea hearing. The government responded that Mendez did not qualify for the departure because he did not have a significantly reduced mental capacity when he committed the offense, and there was no evidence that any such mental condition contributed to the commission of the offense. The court found that it "certainly has the authority to depart downward for diminished capacity under Section 5K2.13," and Mendez "clearly has a history of mental problems." Id. at 20-21. Nonetheless, the court found that he did not qualify for the downward departure because he did not have a significantly reduced mental capacity within the meaning of § 5K2.13. Id. at 21.

Next, the court noted that Mendez's "mental condition and mental history" were factors that it "can, and should, and will consider" in light of United States v.

Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).  Id. at 21.  Counsel for Mendez then reiterated his arguments regarding Mendez's history of mental health problems in arguing that Mendez should receive a sentence "significantly below the guideline range" based on the § 3553 factors.  Id. at 9.  Mendez made a brief statement on his own behalf.  The government responded that he should receive a sentence within the guidelines range because, although he might have some mental health problems, his mental capacity was not in question, and he had a significant criminal history.

The district court stated that it considered that Mendez "has a mental health issue, and has had a mental health issue for a while," which warranted an adjustment to his sentence, although not "as big an adjustment as, [defense counsel], . . . may think appropriate."  Id. at 25-26.  The court found that Mendez "demonstrated a capacity to understand and know what he was doing" in this case and he had engaged in the same offense actions before.  Id. at 26.  Another "significant factor" to the court was Mendez's criminal history, which included a "fairly wide variety of convictions" dating back to 1981, "[i]ncluding crimes of violence."  Id.  The court further found that Mendez would "receive better mental treatment in custody than he has on the outside."  Id. at 27.  The court noted that it had considered all of the statutory factors, even if it had not specifically discussed

them, and it sentenced Mendez to 180 months' imprisonment and a supervised release term of five years. Id. at 25, 27. Following the court's imposition of the sentence, counsel for Mendez objected to the sentence on reasonableness and Eighth Amendment grounds, without further explanation, and the court overruled those objections. Id. at 31-32. The district court entered judgment against Mendez, imposing the 180-month sentence. Mendez timely appealed.

## II. DISCUSSION

On appeal, Mendez argues that the 180-month sentence violated the Eighth Amendment's cruel and unusual punishment prohibition because he suffered from severe mental illness. He contends that the sentence is "disproportionate and excessive" in light of his mental illness, just as execution of a mentally ill defendant violates the Eighth Amendment according to Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242 (2002). He argues that he is and has been severely mentally ill, as evidenced by his diagnosis of schizoaffective disorder, and his sentence should be reduced accordingly due to his reduced culpability. He posits that evolving standards indicate that a 180-month sentence is excessive for the instant offense based on his status as a mentally ill non-violent offender. Mendez asserts that diversion and treatment are more appropriate than a term of incarceration. Mendez cites several academic articles and the Mentally Ill

10

Offender Treatment and Crime Reduction Act of 2004, Pub. L. No. 108-414, 118 Stat. 2327 (2004), which called for federal grants to support alternative sentencing options for mentally ill offenders, in support of his arguments. Mendez acknowledges that, although a sentence within the prescribed statutory range generally does not violate the Eighth Amendment, evolving standards show that a 180-month sentence for a mentally ill defendant is grossly disproportionate for a non-violent offense.

"We review constitutional challenges to a sentence de novo." United States v. Chau, 426 F.3d 1318, 1321 (11th Cir. 2005) (per curiam). The Eighth Amendment's prohibition of cruel and unusual punishment, in non-capital cases, encompasses only a narrow proportionality principle. United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005) (per curiam). When we address an Eighth Amendment challenge to a sentence, we first

> must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed and, if it is grossly disproportionate, the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions.

United States v. Reynolds, 215 F.3d 1210, 1214 (11th Cir. 2000) (per curiam). Successful proportionality challenges are rare because we give Congress substantial deference to determine the types and limits of criminal punishment.

11

Raad, 406 F.3d at 1323.  Accordingly, "a sentence within the statutory limits generally does not violate the Eighth Amendment."  United States v. Johnson, 451 F.3d 1239, 1243 (11th Cir. 2006) (per curiam).

In Ewing v. California, 538 U.S. 11, 123 S. Ct. 1179 (2003), the Court addressed an Eighth Amendment challenge to a 25-years-to-life sentence for grand theft under California's three-strikes law.  The plurality opinion noted that the proportionality review of the sentence must take into account the defendant's "long history of felony recidivism," in deference to the policy judgments of the legislature.  Id. at 29, 123 S. Ct. at 1189-90.  Because Ewing's sentence reflected a rational legislative judgment to impose long prison sentences on felony offenders, it did not violate the Eighth Amendment.  Id. at 30-31, 123 S. Ct. at 1190.  Justices Scalia and Thomas each filed a separate opinion concurring with the judgment that Ewing's sentence should be affirmed and opining that the "proportionality test" was "incapable of judicial application."  Id. at 32, 123 S. Ct. at 1191 (Thomas, J. concurring) (agreeing with part of Justice Scalia's concurrence).   In light of the different opinions at play in Ewing, the Eighth Amendment, at best, "contains a narrow proportionality principle that applies to noncapital sentences" and takes into account the offender's recidivism.  Id. at 20, 123 S. Ct. at 1185 (internal quotations omitted); Raad, 406 F.3d at 1323.  Accordingly, after interpreting the

12

Ewing decision, we have stated that "it is well-settled law that a longer sentence may be imposed on a recidivist, based on his criminal history, even if the offense of conviction is relatively minor in nature." United States v. Lyons, 403 F.3d 1248, 1257 (11th Cir. 2005) (rejecting an Eighth Amendment challenge to a 235-month career-offender sentence).

The Supreme Court held in Atkins that the Eighth Amendment barred the execution of mentally retarded criminals because such punishment was excessive in light of society's "evolving standards of decency." Atkins, 536 U.S. at 321, 122 S. Ct. at 2252. The Court noted, however, that the deficiencies of the mentally retarded "do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability." Id. at 318, 122 S. Ct. at 2250-51. Also, in Roper v. Simmons, 543 U.S. 551, 578, 125 S. Ct. 1183, 1200 (2005), the Court held that, in light of the evolving standards of decency, the Eighth Amendment barred the execution of an offender who was under 18 when he committed his crimes. However, the Court has "imposed protections that the Constitution nowhere else provides" in reviewing Eighth Amendment proportionality challenges to capital sentences because "death is different." Harmelin v. Michigan, 501 U.S. 957, 994, 111 S. Ct. 2680, 2701 (1991).

Mendez fails to satisfy the threshold Eighth Amendment requirement by

13

showing that his 180-month sentence was grossly disproportionate to his conviction for possession with intent to distribute 500 grams of more of cocaine, especially in light of his lengthy criminal history. Notably, he has not pointed to any case to support his claim that his mental illness is an appropriate consideration in the threshold determination regarding the narrow proportionality principle applicable in non-capital cases. Even assuming, arguendo, that Mendez's history of mental illness is proper to consider, his sentence was not grossly disproportionate.

First, the district court properly took note of Mendez's lengthy criminal history dating back more than 25 years, which included firearm convictions, burglary, manslaughter, armed trespass, fleeing and eluding, and drug possession. R4 at 26. Also, Mendez's 180-month sentence was well below the 40-year statutory maximum. As the district court acknowledged, Mendez had a history of mental illness, including diagnoses of depressive disorder, psychotic disorder, adjustment disorder, antisocial personality disorder, and several substance abuse disorders. R4 at 25. Despite these mental problems, Mendez was deemed competent to stand trial, and there was no evidence offered to suggest that he lacked the mental capacity to understand and appreciate the criminality of his offense conduct. In light of Mendez's criminal history and the 40-year statutory

14

maximum sentence, the 180-month sentence was not grossly disproportionate to the seriousness of this drug offense, even considering his mental health problems. Although Mendez relies on Atkins and Roper to support his claim, those cases are distinguishable because they involved death sentences, which warranted a heightened Eighth Amendment analysis than that used in non-capital cases. See Harmelin, 501 U.S. at 994, 111 S. Ct. at 2701. Therefore, we reject Mendez's Eighth Amendment challenge to his sentence.

Mendez also argues that his 180-month sentence is both procedurally and substantively unreasonable under Booker because the district court failed to adequately consider the evidence regarding his mental health or articulate why it did not give his arguments more consideration. He asserts that a within-range Guidelines sentence is not presumptively reasonable, and that district courts must consider the entire range of relevant factors in imposing a sentence. He contends that, if the court adequately had considered his mental health problems and the other relevant factors, such as the non-violent nature of the crime and unlikelihood of deterrence, it would have concluded that 180 months of imprisonment was extreme, even though it fell below the Guidelines range.

We may review a sentence for procedural or substantive reasonableness. Gall v. United States, 552 U.S. ___, ___, 128 S. Ct. 586, 597 (2007). In

15

considering the reasonableness of a sentence, we employ an abuse-of-discretion standard "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range." Id. This abuse-of-discretion standard applies to both procedural and substantive reasonableness. United States v. Ellisor, No. 05-14459, slip op. at 35 n.25 (11th Cir. Apr. 7, 2008). The party challenging the sentence carries the burden of establishing unreasonableness. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

Procedural errors may include the district court's failure to calculate (or improper calculation of) the guidelines range, treatment of the Guidelines as mandatory, failure to consider the factors in 18 U.S.C. § 3553(a), or its failure to adequately explain the chosen sentence. Gall, 552 U.S. at __, 128 S.Ct. at 597. The district court should consider the § 3553(a) factors, as well as the defendant's arguments, at sentencing. See Talley, 431 F.3d at 786. The factors outlined in § 3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to afford adequate deterrence, to promote respect for the law, to provide just punishment for the offense, to protect the public, and to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the Sentencing Guidelines' range; (5) pertinent Sentencing

Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1)-(7).

Although the district court must give a legally sufficient statement of reasons, it need not discuss on the record each § 3553(a) factor in announcing the sentence. Talley, 431 F.3d at 786. Likewise, a district court is not required to "explicitly articulate that it had considered the § 3553(a) factors." United States v. Dorman, 488 F.3d 936, 944 (11th Cir. 2007). In Rita v. United States, 551 U.S. __, __, 127 S. Ct. 2456, 2468 (2007), the Court agreed that a lengthy discussion is not required in the typical case, as long as the sentencing judge "set[s] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."

Regarding substantive reasonableness, "we may find that a district court has abused its considerable discretion if it has weighed the factors in a manner that demonstrably yields an unreasonable sentence." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008). In other words, if the district court made a clear error in judgment in weighing the factors, we will remand for resentencing. Id.

The district court should consider the § 3553(a) factors in light of the facts presented. Gall, 552 U.S. at __, 128 S. Ct. at 596-97. "If [the district court]

17

decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at __, 128 S. Ct. at 597. If the district court imposes a sentence outside the Guidelines range, then we may not apply a presumption of unreasonableness, and "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. We should review the extent of the deviation, or variance, from the Guidelines range as part of its review of the totality of the circumstances. Id.

Mendez's 180-month sentence is neither procedurally nor substantively unreasonable. First, the district court imposed a procedurally reasonable sentence on Mendez because it considered his arguments and the § 3553(a) factors, and it adequately explained the sentence. See Gall, 552 U.S. at __, 128 S. Ct. at 597; Rita, 551 U.S. at __, 127 S. Ct. at 2468. Notably, Mendez does not challenge on appeal the district court's guidelines calculations, including the denial of a downward departure under § 5K2.13. The record shows that the district court heard Mendez's arguments, which centered on his mental-health problems, and it expressly stated that it considered his mental health in arriving at the sentence. R4 at 25. However, the court also noted that, despite Mendez's mental health

18

problems, Mendez understood what he was doing when he committed the instant drug offense, he had done it before, and he had an extensive criminal history. Id. at 26. The court also found that Mendez would receive better treatment while incarcerated than he would receive on the outside. Id. at 27. Thus, the record demonstrates that Mendez's sentence is procedurally reasonable.

Second, Mendez's sentence is substantively reasonable because the district court did not abuse its discretion in weighing the relevant factors. Notably, the 180-month sentence involved an 8-month downward variance from the low end of the Guidelines range. In light of the downward variance, the sentence is substantively reasonable because the record does not show that the district court made a clear error in judgment in giving only a modest sentence reduction for Mendez's mental problems. See Pugh, 515 F.3d at 1191. The district court also properly found that other factors weighed substantially against Mendez, such as his lengthy criminal history, which included violent crimes; the large amount of cocaine involved in the instant offense; and his mental ability to understand what he was doing when committing the instant offense. R4 at 26. Because the district court did not abuse its discretion in the manner in which it weighed these factors, Mendez's 180-month sentence was reasonable.

19

### III. CONCLUSION

We reject Mendez's Eighth Amendment challenge to his sentence and find that the district court did not abuse its discretion by the manner in which it considered the factors proffered by Mendez.  Accordingly, the judgment and sentence of the district court are **AFFIRMED**.