[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2007
THOMAS K. KAHN
CLERK

_____

No. 04-14886

_____

D. C. Docket No. 98-00448-CR-T-26-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM HERMAN DORMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 8, 2007)**

Before ANDERSON, MARCUS and COX, Circuit Judges.

MARCUS, Circuit Judge:

William Herman Dorman appeals his 300-month sentence for conspiracy to

possess with intent to distribute 100 kilograms of marijuana, in violation of 21

U.S.C. §§ 841(a)(1) and 846. For the first time on appeal, he argues that the district court denied him his right of allocution at his sentencing hearing, in violation of due process. He also contends that his sentence was unreasonable under United States v. Booker, 543 U.S. 220 (2005), based on the district court's failure to consider all relevant mitigating factors. After thorough review, we affirm.

I.

"[A] district court's failure to afford a defendant the right of allocution will be reviewed only for plain error where the defendant did not timely object." United States v. Prouty, 303 F.3d 1249, 1251 (11th Cir. 2002). We will correct plain error only where (1) there is an error; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of a judicial proceeding. See United States v. Chisholm, 73 F.3d 304, 307 (11th Cir. 1996).

We review a district court's interpretation of the Sentencing Guidelines de novo and its findings of fact for clear error. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir.), cert. denied, 546 U.S. 1067 (2005). After a district court has calculated a defendant's advisory Guidelines range, it "may impose a more severe

or more lenient sentence," which we review only for reasonableness. United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). In conducting our reasonableness review, which is highly deferential, we do not apply the reasonableness standard to each individual decision made during the sentencing process; instead, we review only the final sentence for reasonableness, in light of the § 3553(a) factors. United States v. Martin, 455 F.3d 1227, 1237 (11th Cir. 2006). The district court need not state on the record that it has explicitly considered each factor and need not discuss each factor. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam). Rather, an acknowledgment by the district court that it has considered the defendant's arguments and the § 3553(a) factors will suffice. Id.

## II.

The relevant facts are straightforward. On December 15, 1998, Dorman and a co-defendant, John J. Cercena, were indicted for conspiring to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), and attempting to actually possess with intent to distribute the same amount, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count Two). Pursuant to a written plea agreement, Dorman pled guilty to Count One and the government dismissed Count Two. At the subsequent plea colloquy,

among other things, Dorman testified that he had never been treated for any type of mental illness. Dorman also stated that he understood where he was and why he was in court at the plea colloquy, and the importance of the proceeding. The district court accepted Dorman's guilty plea and he was released on conditions of an existing bond, pending sentencing.

The probation officer prepared a presentence investigation report ("PSI"), which assigned Dorman a base offense level of 26, pursuant to U.S.S.G. § 2D1.1(c)(7), and recommended a two-point upward adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, and a six-level upward adjustment based on Dorman's status as a career offender (he had two prior felony convictions for controlled substance offenses), for an adjusted offense level of 34. With a criminal history category III (based on six criminal history points), which was enhanced to a VI to account for Dorman's status as a career offender, U.S.S.G. § 4B1.1, Dorman's Guidelines range was 262 to 327 months' imprisonment. In the "Offender Characteristics" section, the PSI noted, inter alia: "The defendant states that he has no history of emotional health problems and has undergone no treatment for such problems."

Dorman objected to the drug quantity attributed to him and the base offense level recommended by the PSI, arguing that he had agreed to purchase less

4

marijuana than the PSI reported.  Dorman also objected to the two-level increase

for obstruction of justice, requested an adjustment for acceptance of responsibility,

and objected to his career-offender status.

Before the sentencing hearing, Dorman absconded.  On March 31, 1999, the

district court issued a warrant for Dorman's arrest for violating conditions of his

release.  He also was indicted for failing to appear to serve his sentence, a violation

of 18 U.S.C. § 3146(a)(1).  Over five years later, Dorman was arrested in Puerto

Vallarta, Mexico and eventually extradited to the United States to face the failure-

to-appear charge.  Notably, on June 7, 2004, which was only about two-and-a-half

months before the hearing at which Dorman asserts the allocution error occurred,

at a hearing before the United States District Court for the Central District of

California, Dorman stated that he understood what he was charged with and that he

was in court based on the failure-to-appear charge.  The district court then ordered

Dorman be remanded to the custody of the United States Marshals Service for

transport back to the United States District Court for the Middle District of Florida.

Dorman returned to the Middle District of Florida and, on August 27, 2004,

the district court conducted a sentencing hearing on the marijuana-conspiracy

charge to which Dorman had pled guilty in 1998.  At the start of the hearing, when

the court asked the parties to state their appearances, Dorman interjected, "[h]e's

5

fired, he is not my attorney." Dorman then said that he had fired counsel because counsel refused to sign an "affidavit -- a contract." The district court asked Dorman to state what counsel had done to be ineffective, to which Dorman responded, "you will release me because nobody has proven that --." The district court observed, "[l]et the record reflect that Mr. Dorman once again is engaging in nonsensical jibberish behavior."

The district court then stated its intent to proceed with the sentencing hearing as scheduled and allowed counsel to remain. Dorman again interjected, this time saying that "[t]here is no proof of any contract which means that this Court does not have jurisdiction over me." In response to the court's query concerning whether, prior to the sentencing hearing, Dorman had reviewed the PSI with counsel, Dorman refused to answer, instead stating, "Objection, Your Honor, my name is William Herman Dorman." The district court overruled Dorman's objections to the offense-level computations and then heard argument on Dorman's criminal-history computation. At this point, Dorman again interrupted and stated, "Objection, Your Honor, my name is William Herman Dorman."

The district court later observed that while Dorman's counsel made his argument in support of a downward departure, "Mr. Dorman has repeatedly and in a raised voice continued on with his nonsensical jibberish. I want the record to

6

reflect [what] . . . [Dorman] is saying while I'm having this dialogue with [defense counsel] and . . . [government counsel], but he has continued in his disruptive behavior . . . ." The government argued against a downward departure based on the PSI's description of how Dorman had engaged in continual criminal activity each time he was released from prison.

The district court subsequently overruled Dorman's objections to his criminal-history calculation, including the career-offender enhancement. The court also overruled Dorman's request for a downward departure under U.S.S.G. § 4A1.3, noting that Dorman continued to commit drug offenses as he got older. The court then adopted the PSI's recommendation of an offense level of 34 and a criminal history category VI, thus yielding a Guidelines range of 262-327 months. The court then advised Dorman of his right to address the court in mitigation, and right to allocution, and the following exchange took place:

> DORMAN: There is a lack of a verified complaint and lack of a verified complaint.
>
> COURT: Start taking that down, please.
>
> DORMAN: - - under oath. The court on its own can dismiss this alleged case and all alleged cases. In view of this, I cannot accept the contract and will not sign the contract. I do not accept, I do not understand, I did not sign, I will not accept the contract and I will not sign the contract.
>
> COURT: Can you tell me what contract you are talking about, Mr.

7

Dorman?

DORMAN:  Hopefully, today, somebody will follow procedure, somebody will not address it to me.

COURT:  All right, it's obvious to me that he wants to continue on with his nonsensical statements.

The government urged the court to impose a high-end sentence given Dorman's lack of respect for the court and absconding before the original sentencing hearing. Another exchange between the court and Dorman then took place:

COURT:  Mr. Dorman, why don't you talk to me instead of the Marshal .

        . . .

DORMAN:  - - it's just pathetic.

COURT:  It is pathetic.  You're a pathetic person.  You are a career criminal and you're going to jail for a long time.

DORMAN:  For the record, my name is William Herman Dorman, live flesh and blood man.

The district court sentenced Dorman to a 300-month term of imprisonment, followed by five years of supervised release, and stated:

this is a mid-level sentence, and the reasons are obvious, he fled from the jurisdiction of this Court to avoid sentencing for several years.  He is a career criminal, really -- he deserves the top of the guidelines, but I'm going to give him credit for that year you were talking about, Mr. Farmer, okay.

8

Dorman's counsel then renewed all previous objections. After the court remanded Dorman to the custody of the United States Marshals Service, Dorman made an objection, specifically, "[h]opefully, somebody will follow procedure." The court observed that it had followed procedure and that was why Dorman was "going to prison for 25 years." Dorman stated, "[t]his proceeding is illegal" and the court observed,

> he continues to, in a loud voice, talk about some contract that's nonsensical, and he's also given me no just reason why I should discharge his very fine lawyer, Mr. Farmer. I've given him an opportunity to tell me what it is Mr. Farmer has done besides not signing some contract and he hasn't done it.

At the end of the hearing, Dorman stated, "[t]his is an illegal proceeding," and "[l]et it be acknowledged all over the world, people will know in many walk of lifes [sic] authority of this country . . ." The district court entered final judgment on September 17, 2004.

Dorman timely appealed. Dorman's counsel moved to withdraw from representation due to an appearance of conflict of interest, which we granted. After substitute counsel was appointed for Dorman, but before briefing was completed, we remanded the case to the district court for the limited purpose of determining whether Dorman wished to pursue the appeal, whether he was

9

competent to make that decision, and whether a guardian ad litem was necessary to pursue the appeal.

On remand, a magistrate judge responded by ordering Dr. George M. Northrup, an expert in the field of psychiatry, to examine Dorman to determine his competency to appeal, his ability to understand the nature and consequences of the proceedings against him, and his ability to assist counsel properly in his appeal. On September 30, 2005, at a competency hearing, Dr. Northrup opined that Dorman was not competent to make the decision as to whether he wanted to pursue the instant appeal, but that Dorman could become competent with the correct medication within three to twelve months. Dr. Northrup explained that his opinion was based, in part, on Dorman's conspiracy theories concerning the government and his uncooperativeness. The magistrate judge, after hearing Dr. Northrup's testimony and considering her own interactions with Dorman, indicated she was not prepared to accept Dr. Northrup's opinion but rather determined that further evaluations were warranted. Accordingly, the magistrate judge ordered that Dorman be transferred to the Federal Correctional Institution in Butner, North Carolina to be evaluated further and to determine whether he was competent to proceed with the appellate proceedings.[1]

---

[1] Contrary to Dorman's suggestion that he was deemed incompetent, after the first competency hearing, the magistrate judge did not find Dorman to be incompetent. The

A little over five months after the first competency hearing, on March 9, 2006, the magistrate judge held another competency hearing at which Dr. Tanya Cunic, a forensic psychologist, testified. Dorman had undergone psychological examinations, and Dr. Cunic had assessed his competency during the course of numerous informal interviews. Dr. Cunic opined that Dorman's behavior and beliefs, although "out of the norm," were <u>not</u> symptomatic of mental illness. Rather, according to Dr. Cunic, Dorman's behavior and expressed beliefs were consistent with "free-men" theories, such as the Montana Freemen or Republic of Texas, but were <u>not</u> indicative of delusional or disordered thought processes. In Dr. Cunic's opinion, Dorman was competent to understand the instant appellate proceedings and to assist his counsel in those proceedings.

Based on this testimony and having had an opportunity to observe Dorman, the magistrate judge found that Dorman was not suffering from a mental disease and was competent to proceed. The magistrate judge noted Dr. Northrup's earlier opinion that Dorman was incompetent, but found "the more recent competency evaluation of Defendant by Dr. Cunic conducted in a custodial setting over an extended period of time is entitled to greater weight." The magistrate judge also noted that at the most recent competency hearing, Dorman had <u>unequivocally</u>

magistrate judge expressly indicated she wanted more information before making any finding as to Dorman's competence.

11

requested continued representation by the Federal Public Defender's Office, thereby indicating his wish not to forego his right to appeal. Accordingly, the magistrate judge issued a Report and Recommendation ("R&R") stating that Dorman was competent to proceed in the appellate court, that he should continue to be represented by counsel, and that appointment of a guardian ad litem was unnecessary. The district court adopted the R&R. Shortly thereafter, the case returned to this Court for further proceedings.

III.

Dorman argues, for the first time on appeal, that the district court violated his allocution and due-process rights at the sentencing hearing when, after giving Dorman the opportunity to allocute and present mitigating evidence, the district court interrupted Dorman's statements, although they did not concern allocution or mitigation. Dorman urges that the district court erroneously interpreted his conduct as deliberately disruptive, as opposed to the result of a mental illness. Dorman asks us to order a new sentencing hearing based on Dr. Northrup's determination that Dorman was not competent. We are unpersuaded.

Again, because Dorman raises this claim for the first time on appeal, our review is only for plain error. We can find no plain error. "Allocution is the right of the defendant to make a final plea on his own behalf to the sentencer before the

12

imposition of sentence." Prouty, 303 F.3d at 1251. Rule 32(i)(4)(A)(ii) of the Federal Rules of Criminal Procedure provides that the court, prior to imposing sentence, must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." The allocution process affords a criminal defendant "an opportunity to plead personally to the court for leniency in his sentence by stating mitigating factors and to have that plea considered by the court in determining the appropriate sentence." United States v. Gerrow, 232 F.3d 831, 833 (11th Cir. 2000) (per curiam) (internal quotation marks omitted), overruled in part on other grounds, United States v. Sanchez, 269 F.3d 1250, 1277 n.51 (11th Cir. 2001) (en banc).

Here, there is little question that the district court, on numerous occasions, addressed Dorman personally and provided him with the chance to he heard and to present mitigating evidence, to which Dorman provided non-responsive answers. The court also expressly afforded Dorman the opportunity to make a final plea on his own behalf, to which Dorman again provided wholly non-responsive answers. Moreover, the district court heard mitigating argument from Dorman's counsel, during which Dorman continued to interrupt with comments that, again, did not relate to allocution or mitigation. On this record, it is clear that the district court complied with the requirements for a valid allocution, and neither our case law nor

13

Rule 32(i)(4)(A)(ii) requires more. Simply put, a review of this record reveals neither error nor plain error based on allocution.

Moreover, where, as here, a defendant asserts a due-process violation that is rooted in the sentencing court's misunderstanding of his behavior at sentencing, he must establish (1) that the disputed information is materially false or unreliable, and (2) that the sentencing judge relied on that information. United States v. Giltner, 889 F.2d 1004, 1007 (11th Cir. 1989) (per curiam). First, from our thorough review of the record, there is no evidence that at the time of sentencing, the district court had a materially false understanding of Dorman's mental condition. See id. At his plea hearing, Dorman testified that he had never been treated for any type of mental illness and that he fully understood the charges he faced. After he absconded and was extradited from Mexico to the Central District of California, only two-and-a-half months before the allocution procedure he now challenges, Dorman again indicated that he understood why he was before the court and the charges against him. According to the PSI, Dorman reported having no history of mental or emotional health problems and had undergone no treatment for such problems in the past. Although at sentencing, the district court observed that Dorman made "nonsensical jibberish" statements and engaged in "disruptive behavior," the court made no finding one way or the other as to whether those

14

statements indicated an irregular mental condition. In short, the record does not reveal an error on the first <u>Giltner</u> prong -- disputed information that is materially false or unreliable concerning Dorman's behavior at the sentencing hearing -- let alone plain error.

Likewise, on the second prong, there is no evidence that the district court relied on Dorman's mental condition when imposing sentence. That is to say, even if Dorman could satisfy the first prong of <u>Giltner</u>, there is no indication in the record that his mental condition had anything to do with his sentence. Rather, the record reflects that the district court relied both on the fact that Dorman fled from the jurisdiction of the court to avoid sentencing for several years and on his criminal history to impose a sentence in the middle of the applicable Guidelines range. Dorman's mental condition was not mentioned in connection with the imposition of sentence. Moreover, the subsequent competency evaluations and the unambiguous findings of the magistrate judge determined Dorman to be competent. Notably, Dorman has not objected to the competency proceedings nor to the competency findings. On this record, Dorman cannot satisfy his burden to establish a  due-process error, let alone a plain error. <u>See</u> <u>id.</u>[2]

---

[2]Because Dorman has not satisfied the first two prongs of the plain error test -- (1) error, (2) that was plain -- we need not, and do not, reach the other prongs. It is for this reason that our decision in <u>Prouty</u> is inapposite. In <u>Prouty</u>, the parties agreed that the district court had not afforded Prouty <u>any</u> opportunity to allocute before sentencing, and thus there was error and it

15

IV.

We likewise are unpersuaded by Dorman's argument that his sentence was unreasonable. After Booker, we have held that the district court first must correctly calculate the defendant's Guidelines range, and then, using the § 3553(a) sentencing factors, may impose a more severe or more lenient sentence, as long as it is reasonable. United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). The relevant § 3553(a) factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed . . . [treatment] . . . ; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . .; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); see also Booker, 543 U.S. at 260-61. As we have observed, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of

___

was plain. See 303 F.3d at 1251 ("Both parties in this case agree that the court did not comply with [the prior version of Rule 32(i)(4)(A)(ii)], which requires the court to afford the defendant an opportunity to allocute before sentence is imposed."). We then concluded that Prouty had satisfied his burden on the third and fourth prongs of the plain error test, where Prouty had not received the lowest sentence possible under his Guidelines range. Id. at 1253. Here, by contrast, Dorman was afforded the rights to which he is entitled under Rule 32(i)(4)(A)(ii), and accordingly, there was no error, plain or otherwise.

16

the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

The record does not support Dorman's contention that his sentence is unreasonable. Rather, the district court considered the § 3553(a) factors, accurately calculated the Guidelines range, and sentenced Dorman within that range. See Scott, 426 F.3d at 1330. Despite the district court's failure to explicitly articulate that it had considered the § 3553(a) factors, by virtue of the court's consideration of Dorman's objections and his motion for a downward departure, the court did, in fact, consider a number of the sentencing factors: (1) the court's review of the amount of drugs attributable to Dorman implicated the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1); (2) the court's observation that Dorman had continuously committed criminal activity each time he was released from prison concerned the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant and took into account Dorman's history, id. § 3553(a)(1), (2); and (3) the court's consideration of the PSI, the advisory Guidelines range, and the parties' arguments implicated the types of sentences available, id. § 3553(a)(3).

Dorman's assertion that his sentence is unreasonable because his co-conspirators received lesser sentences, which implicates § 3553(a)(6), is

17

without merit because, as even Dorman acknowledges, in the co-defendants' cases the government filed substantial-assistance motions. The government, understandably, did not file a motion for substantial assistance on Dorman's behalf in light of his decision to abscond to Mexico in 1999 prior to his sentencing and his return for sentencing only after having been arrested and extradited. Moreover, Dorman was sentenced at the middle of the Guidelines range and below the maximum statutory sentence of life imprisonment. Cf. United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005) (per curiam). In short, Dorman has not shown that his sentence was unreasonable under Booker.

**AFFIRMED.**