[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10023
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cr-20821-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VERGIL VLADIMIR GEORGE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 4, 2019)

Before TJOFLAT, GRANT and HULL, Circuit Judges.

PER CURIAM:

For the third time, Vergil Vladimir George appeals his total 259-month

sentence, imposed after a jury convicted him of multiple crimes stemming from his

drug-dealing and identity-theft activities.  In the first appeal, this Court affirmed the advisory guidelines calculations, but vacated George's sentence and issued a limited remand because the district court did not allow George to allocute.  United States v. George, 872 F.3d 1197, 1204–09 (11th Cir. 2017) ("George I").  In the second appeal, we again vacated George's sentence and issued another limited remand because this time the district court allowed George to allocute but did not allow the parties to argue in support of a particular sentence.  United States v. George, 752 F. App'x 816, 820–21 (11th Cir. 2018) (unpublished) ("George II").  At the second resentencing, the district court heard both George's allocution and counsel's arguments.  In the instant appeal, George now challenges the procedural and substantive reasonableness of his total 259-month sentence imposed during his second resentencing.  After review, we affirm.

## I. BACKGROUND

**A. Underlying Convictions**

As set forth in George I, the trial evidence showed that George ran his drug-dealing and identity-theft operations out of his apartment and his barbershop and used the proceeds from his illegal activities to pay for, among other things, more drugs and exotic car rentals.  872 F.3d at 1200–01.  Federal Bureau of Investigation ("FBI") agents conducted a search of the barbershop, pursuant to a warrant, and discovered heat sealers, scales, marijuana, a drug kit, cocaine residue,

2

a firearm, a box of ammunition for a different firearm, a credit card embosser, a computer, devices used to read credit cards, stacks of prepaid gift cards, numerous cell phones, numerous credit cards, a thumb drive, and a Western Union card. Id. at 1201. At trial, FBI agents, an FBI informant, one of George's coworkers, and other drug dealers testified. Id. at 1199–1201. The jury also heard George's recorded interview with FBI agents wherein he admitted that the firearm found in the barbershop was his and two recorded phone calls wherein he offered to sell large amounts of cocaine to the FBI informant. Id. at 1200–01.

Ultimately, the jury convicted George on six felony counts: (1) conspiracy to possess with intent to distribute five or more kilograms of cocaine and a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(D), 846 (Count 1); (2) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 3); (3) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 4); (4) possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(3), 2 (Count 5); and (5) two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 2 (Counts 6 and 7). Id. at 1202.

## B. Initial Sentencing

George's presentence report ("PSR") assigned him a total offense level of 36 and a criminal history category III, which yielded an advisory guidelines range of

235 to 293 months for Counts 1, 3, 4, and 5. Id. Counts 6 and 7 (the aggravated identity theft convictions) each carried a mandatory consecutive term of 24 months' imprisonment to be imposed concurrently or consecutively to each other. Id. George requested a downward variance to a total sentence of 145 months' imprisonment, consisting of 121-month concurrent terms for each of Counts 1, 3, 4, and 5, followed by the mandatory 24-month terms for Counts 6 and 7, to run concurrently to each other. In support, George argued that he had a troubled background but nevertheless was a hard-working family man who had good relationships with his son and friends.

At George's initial sentencing hearing, the district court stated that it had reviewed the PSR and found that the advisory guidelines range was 235 to 293 months as to Counts 1, 3, 4, and 5. The district court stated that it understood that Counts 6 and 7 carried mandatory 24-month terms, which would run consecutively to the other counts but could run either consecutively or concurrently to each other. Then, the district court stated that it had reviewed George's motion for a downward variance and heard the parties' arguments on his motion and for a reasonable sentence. George largely reiterated his arguments from his motion, adding that his offenses were not serious because no drugs were actually found at the barbershop or his home, the witnesses testified to lower, personal-use amounts of drugs, and there was no loss from the fraud or the Hobbs Act robbery.

4

In opposition, the government argued that: (1) George's offenses were serious because he handled kilogram-quantities of drugs, he possessed a firearm, he ran a sophisticated fraud operation, and his unsuccessful Hobbs Act robbery posed a risk of violence; (2) he had an extensive criminal history; (3) there was a strong need to deter others from thinking that they could participate in similar conduct to get rich quick; and (4) the community was better off without George and needed to be protected from his future crimes.

The district court rejected George's attempts to minimize his offenses and implicitly denied his downward-variance motion. Specifically, the district court stated that George was a "con man" who supported his extravagant lifestyle with his illegal activities, that there was a strong need for deterrence, that George should be an example for others, that he was trying to be "a bad guy" or a "hood," and that the lack of drugs discovered, financial loss, or violence in this case was not "for lack of trying." Thereafter, the district court stated that it had considered the parties' statements, the PSR containing the advisory guidelines range, and the 18 U.S.C. § 3553(a) factors. Before pronouncing its sentence, the district court stated that, "in addition to the statutory consecutive sentence the court must impose, a sentence within, but at the low end, of the advisory guidelines range will provide sufficient punishment and adequate deterrence."

After all of these explanations, the district court sentenced George to a total sentence of 259 months' imprisonment—concurrent terms of 235 months as to each of Counts 1 and 3 and 120 months as to each of Counts 4 and 5,[1] and two terms of 24 months as to Counts 6 and 7, to run concurrently to each other but consecutively to the remaining counts. Id. at 1203. The district court, however, did not give George an opportunity to allocute. Id. at 1203, 1206.

## C. First Appeal

On direct appeal, this Court affirmed the district court's application of the sentencing guidelines but vacated George's total sentence and issued a limited remand to allow George to allocute. Id. at 1204–09. We clarified, however, that George was "not entitled to an entirely new resentencing—he may not reassert or reargue any of his objections to the PSR, file new objections to the PSR, or file a new sentencing memorandum." Id. at 1209. In this first appeal, we did not reach the issue of substantive reasonableness. Id.

## D. First Resentencing

At his first resentencing, the district court allowed George to allocute but heard no arguments due to the district court and the parties' mutual belief that George's allocution was the only relevant matter for resentencing. See George II,

---

[1]The statutory maximum term for Counts 4 and 5 was ten years' imprisonment. George I, 872 F.3d at 1202 n.5.

752 F. App'x at 820.  In his allocution, George proclaimed his innocence, referenced "several significant errors that occurred during [his] trial," requested not to be punished for exercising his right to trial, asked for the district court's mercy and forgiveness, referenced his newfound religion, apologized to the district court and to his family, and stated that he had reflected on his sentence and wished to spend time with his children and family.

The district court stated again that it had considered the parties' statements, the PSR containing the advisory guidelines range, and the § 3553(a) factors, and found that, "in addition to the statutory consecutive sentence that the Court must impose, a sentence within, but at the low end of the advisory guidelines range, will provide sufficient punishment and adequate deterrence."  The district court then imposed the same sentence of concurrent terms of 235 months as to Counts 1 and 3 and 120 months as to Counts 4 and 5, plus two terms of 24 months as to Counts 6 and 7, to run concurrently to each other but consecutively to the remaining counts.

## E. Second Appeal

On direct appeal from this first resentencing, this Court again vacated George's sentence and remanded.  Id. at 820–21.  We concluded "that the parties and the district court labored under a mutual misunderstanding as to the scope of this Court's limited remand" in George I.  Id. at 820.  We explained that the remand's scope "did not preclude either George or the government from arguing

for a particular sentence, in light of the aggravating and mitigating sentencing factors," which included George's allocution.  Id.

However, in determining the scope of our second limited remand, we rejected George's argument that he was entitled to a de novo resentencing or to a resentencing in which he could reargue issues regarding his guidelines calculations.  Id. at 821.  We clarified that, on the second remand, the district court was not required to "impose any particular sentence or a lower sentence" and was not precluded from "impos[ing] the same sentence if it determines, after allocution and counsels' argument[s], that sentence remains the appropriate sentence."  Id. Similar to before, we added (1) that "George may not reargue issues already or necessarily decided during the first sentencing that either have been affirmed on appeal or could have been but were not raised before now"; and (2) that "[t]his restriction would include objections to George's PSR or the district court's advisory guidelines calculations."  Id. at 821–22.  We also directed the district court upon a second resentencing to: (1) address George personally and permit him to allocute; (2) resume the sentencing proceedings from that point and allow counsel to argue for a particular total sentence in light of the § 3553(a) factors and the record, including any further allocution by George; and (3) only after considering the record—including George's allocution, the § 3553(a) factors, and the parties' arguments—select and pronounce the total sentence.  Id. at 821.

8

**F. Second Resentencing**

At his second resentencing, the district court again allowed George to allocute, during which he stated that he was a new man, had engaged in numerous "proactive activit[ies]" while incarcerated, and made "major self-adjustments." Specifically, he had enrolled in various self-help and rehabilitation prison programs, tutored other inmates, wrote an anti-bullying book, started accepting responsibility for his actions rather than blaming others, and realized the harmful impact his actions had on his family members. He also highlighted his strong support system and employment opportunities outside of prison and asked for forgiveness.

After George's allocution, the parties made their arguments regarding George's downward-variance motion and for a reasonable sentence. George sought a downward variance to "a sentence of 180 months plus two years on [Counts 6 and 7] for a total of 204 months."[2] George highlighted his rehabilitative progress, his personal growth over the past few years while in prison, his remorse over his offense conduct, the pain he caused his family, and his promising post-prison prospects. The government reiterated the nature and seriousness of George's offenses, his characteristics, and the need to afford deterrence. The

---

[2]While not articulated, it appears that defense counsel's requested 204-month sentence was based on proposed concurrent terms of 180 months as to Counts 1 and 3 and 120 months as to Counts 4 and 5, and two terms of 24 months as to Count 6 and 7, to run concurrently to each other but consecutively to the remaining counts.

government requested the same sentence of concurrent terms of 235 months as to Counts 1 and 3 and 120 months as to Counts 4 and 5, plus two terms of 24 months on Counts 6 and 7, to run concurrently to each other but consecutively to the remaining counts.

After George's allocution and hearing the parties' arguments, the district court imposed the same total 259-month sentence. The district court explained that the total sentence consisted of concurrent terms of 235 months as to Counts 1 and 3 and 120 months as to Counts 4 and 5, plus two terms of 24 months as to Count 6 and 7, to run concurrently to each other but consecutively to the other counts. In support of its sentence, the district court explained:

> I gave good consideration to this. I remember the case very well. I remember the barbershop, I remember everything about this case. Now I'm hoping that this Criminal Justice Reform Act that has just been passed will help Mr. George, but I do not believe that a lower sentence is justified at this particular time.

Although twice before the district court had mentioned the PSR containing the advisory guidelines range, the parties' arguments, and the § 3553(a) factors, this time the district court did not mention that it considered them again in fashioning its sentence. George objected to the sentence on procedural and substantive reasonableness grounds. This appeal followed.

10

## II.  DISCUSSION

George argues that his total 259-month sentence is unreasonable.  Generally, we review the reasonableness of a sentence under a deferential abuse-of-discretion standard using a two-step process.  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).  "We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances."  Id.  George, as the party challenging the sentence, bears the burden to show that his sentence is unreasonable in light of the record and the § 3553(a) factors.  Id.

### A. Procedural Reasonableness

George argues that the district court procedurally erred by failing to provide a sufficient statement of reasons for its sentence as required under § 3553(c)(1).[3] Under § 3553(c)(1), a district court "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence."  18 U.S.C. § 3553(c)(1).  In doing so, the district court should "tailor its comments to show that the sentence imposed is appropriate" in light of the § 3553(a) factors.[4]  United States v. Bonilla, 463 F.3d 1176, 1181 (11th Cir. 2006).

---

[3]We review de novo whether the district court's explanation of its sentence complied with § 3553(c)(1), regardless of whether the defendant objected on such grounds at sentencing. United States v. Bonilla, 463 F.3d 1176, 1181 (11th Cir. 2006).

[4]The § 3553(a) factors include, of relevance: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness

That said, the district court is not required to incant specific language or articulate its consideration of each individual § 3553(a) factor, so long as the whole record reflects the district court's consideration of the § 3553(a) factors. Id. at 1181–82. When the district court fails to mention the § 3553(a) factors, we look to the record to see if the district court did, in fact, consider the relevant factors. See United States v. Dorman, 488 F.3d 936, 944 (11th Cir. 2007). When pronouncing its chosen sentence, the district court need only set forth enough to satisfy us that it considered the parties' arguments and had a reasoned basis for exercising its own legal decisionmaking authority. United States v. Carpenter, 803 F.3d 1224, 1232 (11th Cir. 2015).

## B. Instant Appeal

The outcome of this appeal depends upon whether we review the district court's statements at the second resentencing hearing in isolation, or in context with its statements at the two prior sentencing hearings. George focuses solely on the district court's brief explanation of its sentence at the second resentencing hearing. He contends that the district court completely failed to explain why it was imposing the exact same total sentence. He stresses that the district court made no

---

of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (6) the kinds of sentences available; and (7) the sentencing guidelines range. 18 U.S.C. § 3553(a)(1)–(4), (6)–(7).

mention of his statement of complete contrition, how he is now a different man than who he was at initial sentencing, or counsel's downward-variance argument.

In contrast, the government argues that, when reviewing the record as a whole, and considering the second resentencing in context with the prior hearings, the district court sufficiently explained its sentence.

Given the history of this case, and that the jury trial and all three sentencing hearings were presided over by the same district court judge, we find it appropriate to consider the entire record, rather than considering only the third hearing in isolation. Here, the record as a whole shows that the district court expressly articulated that it had considered the § 3553(a) factors, the PSR containing the advisory guidelines range, and the parties' arguments. Indeed, in the various arguments before the district court, the parties had discussed the majority of the § 3553(a) factors—namely, George's history and characteristics, the nature and seriousness of the offenses, and the needs for deterrence and to protect the public. The district court also heard George's allocutions touching upon his personal history and characteristics and the needs for deterrence and to protect the public.

Moreover, at the initial sentencing hearing, the district court provided a sufficiently in-depth explanation of its sentence—focusing on the seriousness of George's offenses despite his attempts to minimize his conduct, his history and characteristics of being a "con man" who supported his extravagant lifestyle with

13

his illegal activities, and the need for general deterrence by making him an example to others.  See George I, 872 F.3d at 1203.  Then, in attempted compliance with our mandates, the district court upon the first and second resentencings picked up where it left off, and without rehashing its prior explanations, provided shorter explanations at the first and second resentencings. At the last sentencing hearing, the district court made clear that it had given "good consideration" to George's case, that the district court "remember[ed]" his case "very well," and that the district court did not "believe that a lower sentence [was] justified at this particular time," after hearing George's allocution and counsel's arguments.

Given the unique procedural history here and the fact that the same judge presided over all of the proceedings, we conclude that we should look to the record as a whole and that the district court was not required to give another lengthy explanation at the third hearing.  See Carpenter, 803 F.3d at 1232; Dorman, 488 F.3d at 944; Bonilla, 463 F.3d at 1181–82.  Accordingly, George has not shown that the district court erred or abused its discretion in explaining his sentence.  See Tome, 611 F.3d at 1378; Bonilla, 463 F.3d at 1181.

## C. Substantive Reasonableness

As to substantive reasonableness, George argues that his total 259-month sentence is greater than necessary to satisfy the purposes of sentencing.  Under the

14

abuse-of-discretion standard, we will vacate a sentence on substantive reasonableness grounds only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted). We will not "set aside a sentence merely because we would have decided that another one is more appropriate" and we ensure only that the district court's sentence is a reasonable one. Id. at 1191. When a district court imposes a sentence within the advisory guidelines range, we ordinarily will expect the sentence to be a reasonable one. United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009). Further, a district court may attach great weight to one factor over others, and the weight it attaches to any one factor is committed to its sound discretion. United States v. Rosales-Bruno, 789 F.3d 1249, 1254 (11th Cir. 2015).

As a threshold matter, substantive reasonableness review does not apply to George's consecutive 24-month sentences for the identity-theft convictions in Counts 6 and 7 because those were statutory mandatory minimum sentences. See United States v. Castaing-Sosa, 530 F.3d 1358, 1361–62 (11th Cir. 2008). As this Court has held, "§ 3553(a) plainly does not confer upon the district court the authority to sentence a defendant below the statutory mandatory minimum based

15

on its consideration of the § 3553(a) factors." Id. at 1361. "Booker made advisory the Sentencing Guidelines, not statutory mandatory minimums enacted by Congress," and thus § 3553(a) does not apply. Id. at 1362 (citing United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005)). Notably too, the district court had authority to make those two 24-month sentences run consecutively to each other but did not do so. While the district court had to make those sentences run consecutively to the other counts, the district court imposed them concurrently to each other, which in itself is a sign of reasonableness. Thus, we focus on the district court's advisory-guidelines-range sentence of 235 months as to Counts 1 and 3.[5]

Here, George's 235-month concurrent sentences as to Counts 1 and 3 fall at the very bottom of the 235-to-293-month advisory guidelines range for those counts. See Docampo, 573 F.3d at 1101; George I, 872 F.3d at 1202. Nevertheless, George argues that his within-guidelines-range sentence is still substantively unreasonable because the government's case against him was weak, no large amounts of drugs or firearms were found, his case did not involve violence, and he has "undergone a serious rehabilitation while incarcerated." However, the district court was well within its substantial discretion to weigh more

---

[5]George does not explicitly challenge his 120-month statutory maximum sentences as to Counts 4 and 5 and never argued for sentences below 120 months on those counts.

heavily other considerations, like (1) George's history and characteristics of supporting his extravagant lifestyle with his illegal, "con man" activities; (2) the seriousness, nature, and circumstances of his offenses, which may not have involved the highest amount or degree of drugs, financial loss, or violence, but wasn't "for lack of trying"; and (3) the strong need for deterrence.  See 18 U.S.C. § 3553(a)(1)–(3); Rosales-Bruno, 789 F.3d at 1254; George I, 872 F.3d at 1203.

Accordingly, George has failed to show that "the district court committed a clear error of judgement in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of [this] case."  See Irey, 612 F.3d at 1190 (quotation marks omitted).[6]

### III. CONCLUSION

Because George has failed to show any procedural or substantive unreasonableness, we affirm his sentences.

**AFFIRMED.**

---

[6]Because we affirm George's sentence, we deny as moot his request to assign his case to a different district court judge for a third resentencing.  Likewise, we deny the government's motion to supplement the record with new evidence.