[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12748
Non-Argument Calendar

_____

D.C. Docket No. 3:16-cr-00104-TJC-JRK-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEENO TAWWAH JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 14, 2021)

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Keeno Tawwah Jackson, a federal prisoner proceeding *pro se*, appeals the district court's denial of his motion for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). The district court denied the motion, finding that Mr. Jackson may pose a danger to the community.

After careful review of the parties' briefs and the record, we affirm the district court's denial of Mr. Jackson's motion for a reduced sentence.

**I**

In 2013, law enforcement arrested Jackie Hooper at a Texas border patrol checkpoint after discovering cocaine inside the tractor trailer that he operated. An investigation revealed that the truck belonged to MTM Transportation in Jacksonville, Florida. After surveilling MTM for several months, law enforcement arrested Trae Charles Byrd—whose mother owned MTM—after observing him engage in a transaction involving four kilograms of cocaine.

Between 2012 and 2014, Mr. Jackson received at least 19 kilograms of cocaine from Mr. Byrd for distribution. Law enforcement recovered approximately $31,391 in drug proceeds from Mr. Jackson's truck.

In 2016, a federal grand jury indicted Mr. Jackson for conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C.

§§ 841(a)(1), 841(b)(1)(A), and 846. Mr. Jackson pleaded guilty, and the district court accepted the plea upon the recommendation of a magistrate judge.

At the time, Mr. Jackson had "historically battled hypertension, high cholesterol, and sinus/allergy problems," for which he was being treated with prescription drugs. *See* PSI ¶ 59. His medical records showed that he had been treated in 2015 for undiagnosed abdominal pain. Mr. Jackson did not object to the facts contained in the PSI or the calculated advisory sentencing guideline range of 120-21 months.

Mr. Jackson had a prior criminal history. In 1999, while under police surveillance due to suspicion of drug distribution, Mr. Jackson drove up to the detectives surveilling him and followed them when they left the area. *See* PSI ¶ 43. Mr. Jackson shot at the detectives' car and followed them for approximately two miles before another police officer attempted to conduct a traffic stop. He attempted to flee but was apprehended. *See id.* He was convicted of aggravated assault and aggravated fleeing and was sentenced to 5 years in prison. *See id.*

In July of 2017, the district court sentenced Mr. Jackson to the statutory mandatory minimum sentence of 120 months' imprisonment and 5 years' supervised release. He filed a direct appeal, but that appeal was dismissed upon his motion for voluntary dismissal.

In May 2020, Mr. Jackson filed the instant *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting that the district court reduce his prison sentence based on the public health crisis created by COVID-19. He argued that the COVID-19 outbreak was an extraordinary and compelling circumstance that was unforeseeable at the time he was sentenced. He further asserted that, due to the COVID-19 pandemic, the CARES Act permitted the Bureau of Prisons to increase the amount of time a prisoner could spend on home confinement and the number of prisoners eligible for home confinement. He claimed that, according to the Centers for Disease Control and Prevention, he was "subject to get COVID-19" because of a "family inherent health issue, 'heart disease.'" Mr. Jackson cited an e-mail that he had sent to the warden at his facility requesting compassionate release due to his medical conditions.

Mr. Jackson filed an addendum to his motion, arguing that inmates at his facility were unable to practice social distancing and that it was only "a matter of time" before he became infected with COVID-19. He also attached the warden's denial of his administrative request for compassionate release.

Conceding that Mr. Jackson had exhausted his administrative remedies, the government opposed his motion. The government argued that he had not provided the court any supporting documents showing that he suffered from any existing

4

medical conditions that diminished his ability to provide self-care within the prison and from which he was not expected to recover.

Mr. Jackson replied that his BOP facility did no testing for COVID-19 and that, according to the CDC, heart disease was a leading condition that made African Americans more likely to contract the virus and die from it. He argued that the virus was an extraordinary and compelling reason for his release because the sentencing court was unaware at sentencing of the COVID-19 death rate among African Americans with heart disease. He also averred that he was a high-risk individual because of alleged traces of kidney disease, cardiovascular disease, and an inherent case of heart disease. He attached medical records showing his current conditions, including hypertension (high blood pressure), hyperlipidemia (high blood cholesterol), and hypertensive heart disease without heart failure (heart problems due to chronic high blood pressure). His medical records also showed that he had an estimated glomerular filtration rate ("GFR") of greater than 60.

The district court denied Mr. Jackson's motion for compassionate release. It concluded that Mr. Jackson had not shown extraordinary and compelling reasons because the mere existence of COVID-19 was not enough to independently justify compassionate release. It found that Mr. Jackson's unspecified heart disease, whether alone or in conjunction with COVID-19, also did not create an extraordinary and compelling justification for compassionate release. And it found that the record

5

did not show that he suffered from a serious medical or physical condition that substantially diminished his ability to provide self-care within prison and from which he was not expected to recover.

Next, the district court concluded that, even if he had demonstrated an extraordinary and compelling reason for compassionate release, the danger that he posed to the community and the § 3553(a) factors did not support early release. It noted that he had obtained and distributed approximately 19 kilograms of cocaine over a 2-year period and had $31,000 in drug proceeds in his truck at the time of his arrest. It found that his narcotics offense conduct, his prior offense, and his age of 41 years suggested that he may be a danger to the community if released and that he posed a substantial risk of recidivism. It further determined that allowing Mr. Jackson to avoid serving nearly half of his sentence would fail to reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence.

## II

Mr. Jackson contends that the district court erred in denying his motion for compassionate release. He argues that he is not a danger to the community because, during the 1999 offense, he did not intentionally fire on police, but instead fired his gun into the air to scare off who he thought were intruders onto his property. He argues that granting compassionate release to home confinement satisfies the §

3553(a) factors because he meets all the criteria established by the Attorney General for at-risk inmates.

The government responds that the district court reasonably balanced the § 3553(a) sentencing factors, did not consider any improper or irrelevant factor, and did not overlook or ignore any relevant factor in determining that a reduced sentence was not warranted. It argues that a compassionate-release reduction was not merited because the nature and circumstances of the offense and Mr. Jackson's criminal history and characteristics demonstrated that he would pose a danger to the community if he was released early.

We review a district court's denial of a motion pursuant to § 3582(c)(1)(A) for abuse of discretion. *See United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021). The district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes clearly erroneous factual findings. *See United States v. Barrington*, 648 F.3d 1178, 1194 (11th Cir. 2011). A finding of fact is clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Id.* at 1195 (quotation marks omitted).

## A

It is well established that a district court may only modify a defendant's sentence "when authorized by a statute or rule." *United States v. Puentes*, 803 F.3d

597, 606 (11th Cir. 2015). Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A) allowed the district court to reduce a prisoner's term of imprisonment upon motion of the Director of the Bureau of Prisons, after considering the factors set forth in 18 U.S.C. § 3553(a), if it found that extraordinary and compelling reasons warranted such a reduction. *See* 18 U.S.C. § 3582(c)(1)(A) (effective November 2, 2002, to December 20, 2018). The First Step Act amended § 3582(c)(1)(A) to allow the court to reduce a defendant's term of imprisonment upon the motion of the defendant, after exhaustion of all administrative remedies. *See* First Step Act § 603; 18 U.S.C. § 3582(c)(1)(A). The court must find that extraordinary and compelling reasons warrant such a reduction. *See Harris*, 989 F.3d at 912–13.

The district court did not abuse its discretion in denying Mr. Jackson's motion on the basis of his medical condition, even in light of the COVID-19 pandemic. *See, e.g.*, *Harris*, 989 F.3d at 912 (affirming denial of compassionate release where medical conditions only possibly increased defendant's risk of COVID-19). Mr. Jackson cited an unspecified heart disease, high blood pressure, and high cholesterol as extraordinary and compelling circumstances in his motion. The district court observed, however, that high blood pressure and high cholesterol are very common in the United States, and the medical records Mr. Jackson provided showed that he was being treated for both conditions while in custody. Mr. Jackson's medical records also indicated that he was not suffering from heart failure. To the extent that

8

he argued before the district court that he had traces of kidney disease, his medical records did not indicate that he was ever diagnosed with kidney disease, or a risk thereof.

Of Mr. Jackson's cited conditions, only the unspecified heart condition and high blood pressure appear on the CDC's list of conditions that can make someone more likely to get severely ill from COVID-19. *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 29, 2021). As the risk is only potentially higher, we cannot conclude that the district court abused its discretion in denying Mr. Jackson's motion. *See Harris*, 989 F.3d at 912.

**B**

Assuming that Mr. Jackson's medical conditions constituted an extraordinary and compelling circumstance, the denial was not an abuse of discretion. The district court found that Mr. Jackson he may pose a danger to the community if granted early release, and that determination was not based on clearly erroneous factual findings. *See Barrington*, 648 F.3d at 1194–95. The court properly considered the facts relating to Mr. Jackson's drug distribution offense. *See* 18 U.S.C. § 3142(g). The court also properly took into account Mr. Jackson's relatively young age, his prior convictions for aggravated assault on police officers and aggravated felony fleeing

in determining that he may be a danger to the community if released and posed a substantial risk of recidivism. *See* 18 U.S.C. § 3142(g)(3). *See also King*, 849 F.2d at 487 n.2 (stating that a defendant poses a danger to the community if he "might engage in criminal activity to the detriment to the community."). Thus, the district court did not abuse its discretion by denying Mr. Jackson's motion based on its determination that he presented a danger to the community.

The district court, moreover, explicitly stated that it had considered the § 3553(a) factors, and the record shows that it considered multiple factors. *See United States v. Dorman*, 488 F.3d 936, 944 (11th Cir. 2007); *Turner*, 474 F.3d at 1281. Specifically, the court considered the seriousness of the drug offense and his history and characteristics, including his prior convictions for aggravated assault and aggravated felony fleeing or attempting to elude a police officer. It also considered how early release would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence. *See United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016); *Dorman*, 488 F.3d at 944. We conclude that the court did not abuse its discretion by denying Mr. Jackson's motion based on its consideration of the § 3553(a) factors. *See Harris*, 989 F.3d at 912.

10

**IV**

The district court's denial of Mr. Jackson's motion for compassionate release is affirmed.

**AFFIRMED.**