[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13490
Non-Argument Calendar

_____

D.C. Docket No. 1:17-tp-20082-RLR-1


UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

VINCENT FLEITAS,

Defendant–Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 14, 2021)

Before LAGOA, BRASHER and TJOFLAT, Circuit Judges.

PER CURIAM:

Vincent Fleitas, a *pro se* federal prisoner, appeals the District Court's denial of his motion for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act of 2018.[1]  Because we find the District Court did not abuse its discretion in denying the motion, we affirm.

I.

On July 9, 2003, Fleitas pled guilty to robbing two banks in New Orleans, Louisiana.  The United States District Court for the Eastern District of Louisiana sentenced Fleitas to 140-months imprisonment followed by a three-year term of supervised release.

Fleitas was extradited to Florida custody in 2013 and was released to supervised release on June 4, 2017.  Within days, Fleitas began robbing banks again.  On June 12, he passed a note to a bank teller in Fort Lauderdale that read "I GOT A GUN GIVE ME ALL 100 – 50 AND 20'S NO DIE PACK OR TRACERS!  OR I WILL KILL SOMEBODY — HURRY."  The teller gave Fleitas $1,010 from her bank drawer.  Two days later, Fleitas handed a similar note to a bank teller in West Palm Beach: "I got a gun, don't make me use it! Give me all 100's and 50's.  No die pack or tracers or I kill somebody!"  The teller gave Fleitas $10,150.  Police arrested Fleitas at a nearby CVS store later that day.

---

[1] Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) ("First Step Act").

On June 29, 2017, a Southern District of Florida grand jury charged Fleitas with two counts of bank robbery in violation of 18 U.S.C. § 2113(a).[2]  Fleitas pled guilty to one count of bank robbery and the government agreed to seek dismissal of the second count.

Meanwhile, jurisdiction over Fleitas's supervised release for the New Orleans robberies was transferred from the Eastern District of Louisiana to the Southern District of Florida.  The District Court granted the government's motion to dismiss the second robbery count and sentenced Fleitas to 151-months imprisonment on the remaining robbery count and 24-months imprisonment for violating his supervised release, to run consecutively.  Fleitas's significant criminal history made him a career offender under the guidelines,[3] and the 151-month sentence was at the bottom of the guidelines range.

---

[2] Section 2113(a) provides:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined under this title or imprisoned not more than twenty years, or both.

[3] *See* U.S.S.G. § 4B1.1.  In addition to the two New Orleans robberies, the presentence investigation report showed Fleitas's criminal history included (1) a 1990 conviction for second-

On August 24, 2020, Fleitas moved the court to reduce his sentence to time served under § 3582(c)(1)(A).  He claimed he had requested compassionate relief from the warden of the prison where he was confined and hadn't received a response within 30 days.  Accordingly, he was now requesting relief from the Court on the basis of "the heightened risk of death or other poor outcome" that COVID-19 posed because of his age, which was 66, and his medical conditions, which included high blood pressure, high cholesterol, and hepatitis C.  Finding that Fleitas might pose a danger to others if he were released and that his release would be inconsistent with the sentencing factors in 18 U.S.C. § 3553(a), the District Court denied his motion.

On appeal, Fleitas now argues the District Court abused its discretion in denying his motion.  We hold the District Court did not abuse its discretion and accordingly affirm the denial of Fleitas's § 3582(c)(1)(A) motion.

II.

We review a district court's denial of a prisoner's § 3582(c)(1)(A) motion for abuse of discretion.  *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021) (citation omitted).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination,

---

degree murder, (2) a 1995 conviction for first-degree battery, (3) a 2000 theft conviction, and (4) a 2004 bank robbery conviction and a nolle prossed grand-theft charge.

or makes findings of fact that are clearly erroneous." *United States v. Khan*, 794 F.3d 1288, 1293 (11th Cir. 2015) (citation and quotation marks omitted). "[W]hen the Congress expressly requires consideration of § 3553(a) factors, a district court abuses its discretion if it fails to consider them." *United States v. Cook*, 998 F.3d 1180, 2 (11th Cir. 2021). The abuse of discretion standard recognizes that the district court has a range of choice, and we cannot reverse just because we might have come to a different conclusion had it been our call to make. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (citation omitted).

District courts lack the inherent authority to modify a term of imprisonment but may do so to the extent permitted under § 3582(c)'s provisions. *United States v. Jones*, 962 F.3d 1290, 1297 (11th Cir. 2020). Prior to the enactment of the First Step Act in December 2018, § 3582(c)(1)(A) allowed a district court to reduce a prisoner's term of imprisonment only upon motion of the Bureau of Prisons ("BOP") Director. 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 2, 2002, to Dec. 20, 2018). As amended by § 603(b) of the First Step Act, that section now provides, in relevant part, that:

> [T]he court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a

5

reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(1)(A).

In sum, § 3582(c)(1)(A) now allows a district court to reduce a defendant's sentence on the defendant's own motion if (1) he has taken the required administrative steps,[4] (2) the court considers the applicable § 3553(a) factors, (3) the court finds "extraordinary and compelling reasons," and (4) the court finds that reduction is consistent with applicable policy statements.

What constitutes "extraordinary and compelling reasons" isn't to be found in § 3582, but instead in the Sentencing Commission's policy statement. The policy statement applicable here is U.S.S.G. § 1B1.13, *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021), which lists the following reasons, among a few others not relevant here, as extraordinary and compelling:[5] (1) the defendant is terminally ill; (2) the defendant is otherwise suffering from "a serious physical or medical condition," "a serious functional or cognitive impairment," or is "experiencing

---

[4] Whether Fleitas satisfied this requirement is disputed. But we don't decide the issue because we conclude the District Court was within its discretion to deny his motion in any case.

[5] We noted in *Bryant* that § 1B1.13 contains language in tension with the First Step Act—namely, though the Act now allows defendants to move on their own for a sentence reduction, § 1B1.13 "still opens with the prefatory clause '[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)' and later states that '[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A).'" 996 F.3d at 1252 (quoting § 1B1.13 & cmt. n.4) (alterations in original). Notwithstanding this tension, we rejected the argument that § 1B1.13 is inapplicable to post-FSA § 3582(c)(1)(A) motions. *Id.* at 1262.

deteriorating physical or mental health because of the aging process"—to the extent his condition is intractable and "substantially diminishes [his ability] . . . to provide self-care within the environment of a correctional facility"; (3) "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." § 1B1.13, cmt. n.1 (A)–(B).

The policy statement also requires something beyond what § 3582(c)(1)(A) requires: Before a court can reduce a defendant's sentence, it must determine "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[6] § 1B1.13(2).

---

[6] Section 3142(g) provides:

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

III.

In denying Fleitas's § 3582(c)(1)(A) motion, the District Court didn't decide whether Fleitas's age (66) together with his medical conditions (high blood pressure, high cholesterol, and hepatitis C) and the COVID-19 pandemic constituted extraordinary and compelling reasons for his release. Instead, the Court denied the motion because it was "unable to conclude that [Fleitas's] release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a), and . . . that [Fleitas] is not a danger to the safety of any other person or to the community." The Court noted that (1) Fleitas had at that time served under half of his 175-month sentence for the bank robbery conviction and violation of supervised release, (2) that he committed the Florida robbery while on supervised release for the New Orleans robberies, (3) that he told the bank teller during the Florida robbery that he had a gun and would kill someone, (4) that he qualified as a career offender under the guidelines, (5) that the 151-month sentence he received for the Florida robbery

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

was at the bottom of the guidelines range, and (6) that his criminal history included "multiple other violent felonies."

We cannot conclude that the District Court abused its discretion in denying Fleitas's motion. The order reflects that the Court considered the applicable § 3553(a) factors as it was required to do—particularly the "nature and circumstances of the offense and the history and characteristics of the defendant" and the applicable sentencing range under the guidelines. § 3553(a)(1), (a)(4); *see United States v. Dorman*, 488 F.3d 936, 944–45 (11th Cir. 2007) (affirming defendant's sentence because even though the district court did not discuss each of the sentencing factors, the record showed that it considered several of them). The Court also considered the right factors in determining that Fleitas might pose a danger to others were he to be released—*i.e.*, the nature and circumstances of the charged bank robbery, Fleitas's criminal history, and the fact that he was on supervised release when he committed the robbery. *See* § 3142(g). Fleitas's brief doesn't demonstrate that the Court otherwise applied the wrong legal standard or made any clearly erroneous fact findings. The denial of Fleitas's § 3582(c)(1)(A) motion is therefore

   **AFFIRMED.**