[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14296
Non-Argument Calendar
_____

D.C. Docket No. 2:06-cr-14011-DLG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN PAUL EVERHART, II,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 14, 2014)

Before HULL, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

After revoking sex offender John Paul Everhart, II's supervised release term,

the district court imposed a nine-month prison sentence followed by a life term of

supervised release. On appeal, Everhart argues that the life supervised release term is procedurally and substantively unreasonable. After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Original Sentence and Supervised Release

In 2006, Everhart pled guilty to using a computer to persuade, entice, and coerce a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). After serving a sixty-month sentence, Everhart began his 20-year supervised release term on January 18, 2011. Among the terms of Everhart's supervised release were provisions requiring him to attend sex offender treatment and answer truthfully to all of his probation officer's inquiries and forbidding him from violating any laws, associating with a convicted felon without permission, possessing material depicting minors or adults engaged in sexually explicit conduct, and possessing a computer containing an internal, external, or wireless modem.

### B.    First Revocation of Supervised Release

On April 4, 2011, Everhart violated the terms of his supervised release by failing to participate in court-ordered sex offender treatment. The district court revoked Everhart's supervised release and imposed a five-month prison sentence, followed by 234 months (or 19.5 years) of supervised release. The district court

2

ordered that all the other provisions of the original judgment remained in effect. Everhart resumed supervised release on September 23, 2011.

## C.    Petition for Second Revocation of Supervised Release

In June 2013, Everhart's probation officer petitioned for a warrant and revocation of Everhart's supervised release.  A superseding petition charged seven violations, one of which was later dismissed.  The remaining charged violations included: (1) failing to refrain from violating the law when, on May 23, 2012, Everhart made a false statement to his probation officer that a 22 year-old female, Davida Chea Brannon, was his cousin, when in fact she was not related to him; (2) knowingly associating with a convicted felon, namely Brannon, between September 2011 and March 2013 without his probation officer's permission; (3) failing to answer truthfully the probation officer's inquiries about Brannon on April 25, 2012, when Everhart requested to reside with Brannon; (4) failing to answer truthfully the probation officer's inquiries about Brannon on May 23, 2012; (5) buying, selling, exchanging, possessing, trading, or producing visual depictions of adults engaged in sexually explicit conduct when, on June 27, 2013, 27 DVDs containing adult pornography were found in Everhart's possession; and (6) possessing or using a computer with an internal, external, or wireless modem without prior court approval by using such a device between March 21, 2013 and June 20, 2013 to access information about female prison inmates.

3

**D.      Evidentiary Hearing**

At an evidentiary hearing before a magistrate judge, Everhart's probation officers testified that Everhart lived in Miracle Village in Pahokee, Florida, an isolated community that houses approximately 100 convicted sex offenders.[1]  In April 2012, Everhart, who was 44, asked if his cousin Brannon could live with him.  Everhart told the probation officers that Brannon was a Florida prisoner who was about to be released and needed a place to live.  On May 21, 2012, Everhart's request was denied in writing.  Everhart's probation officers explained that although a convicted felon was sometimes allowed to reside with a family member who was on supervised release, in this instance, the probation officers did not think it was a good idea for a 22-year-old woman to live in an isolated sex offender community.  In a subsequent discussion on May 23, 2012, Everhart reiterated to one of his probation officers that Brannon was his cousin and had nowhere else to live.  During the conversation, Everhart became argumentative.

After Everhart's request was denied, one of the probation officers learned that Brannon was not Everhart's cousin, that Everhart made contact with Brannon through a website for prisoner pen pals, that Everhart had written letters to Brannon offering to give her drugs and asking her to lie to his probation officer

---

[1]Miracle Village is a residential community for convicted sex offenders run by a non-profit organization.  The community is in a remote area surrounded by sugar cane fields.  The residents attend sex offender classes on site, but, because they are all convicted felons, they are not otherwise allowed to have more than incidental contact with each other.

about being his cousin, and that it was apparent from the letters that Everhart wanted a sexual relationship with Brannon.[2]  As a result of this discovery, the probation officers searched Everhart's home and discovered numerous letters written to different women inmates, computer printouts of contact information from various prisoner pen pal websites, and adult pornography.

The magistrate judge entered a report ("R&R") recommending that Everhart be found to have committed all six charged violations of his supervised release. No parties objected to the R&R, which was adopted by the district court in a written order.

E.    **Sentencing after Revocation**

At a final revocation sentencing hearing, the district court found that the imprisonment range was four to ten months.  See U.S.S.G. § 7B1.4(a) (providing for range of imprisonment of four to ten months for a Grade B violation and a criminal history category of I).  The government requested a ten-month sentence, followed by twenty years' supervised release, pointing out that Everhart had shown an intent to circumvent his supervised release restrictions and had been

---

[2]One of the probation officers interviewed Brannon, who was incarcerated for methamphetamine possession and theft offenses.  Brannon confirmed that she was not related to Everhart, that Everhart had obtained her contact information from an inmate pen pal website, and that he had written her letters.  In his letters, Everhart told Brannon, inter alia, that he had participated in filming adult pornography and that he could get drugs for them to take on their first night together.  Everhart told Brannon she would be living with him in West Palm Beach, not Pahokee, and never said that he lived in a sex offender community.  Everhart instructed Brannon on what to write to his probation officer and what to say to her own probation officer so that they could live together.

confrontational with his probation officers.  Everhart acknowledged his violations, calling them "knucklehead[ed]," but claimed he had resorted to them due to the isolation he felt "exiled" to a remote sex offender community in the Everglades. Everhart noted that he had made personal progress over the past year, enjoyed his work as a chef, and did not take drugs or drink, and he asked the court to give him an opportunity to prove himself.  Everhart requested a four-month sentence.

The district court imposed a nine-month sentence, stating that it had "carefully considered the statements of all parties and the information contained in the violation report."  The district court also said that it had "determined that a sentence within the guideline range is appropriate."  The district court also ordered that, upon release, Everhart was to be placed on supervised release for life.  After Everhart objected "to the reasonableness of the sentence," the district court explained that "in large part [his] sentence is based upon [his] unwillingness to cooperate with the United States Probation Office."  The district court stated that on supervised release, Everhart was subject to restrictions "based upon [his] conviction for a very serious crime" and was "not able to do or say whatever [he] thought he] want[ed] to say or do whatever [he] want[ed] to do."  The district court stated, "It's not that you just have to do these things, there's a reason, there's a cause and effect."  The district court warned Everhart that he needed to abide by his probation officers' directives or he would face additional sanctions.

6

## II. DISCUSSION

When a defendant violates a condition of supervised release, the court may revoke the supervised release term and impose a prison term.  See 18 U.S.C. § 3583(e)(3).  The district court may also "include a requirement that the defendant be placed on a term of supervised release after imprisonment."  Id. § 3583(h).  The new term of supervised release is not bound by the length of the previously imposed term, but instead to the underlying felony committed.  United States v. Pla, 345 F.3d 1312, 1315 (11th Cir. 2003).

The new supervised release term may be longer than the initial supervised release term imposed.  Id.  However, the new supervised release term cannot be longer than "the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon the revocation of supervised release."  18 U.S.C. § 3583(h).  The statutorily authorized supervised release term for Everhart's sex offense was five years to life.  See id. § 3583(k).

"We review the sentence imposed upon the revocation of supervised release for reasonableness."  United States v. Velasquez Velasquez, 524 F.3d 1248, 1252 (11th Cir. 2008).  Our reasonableness review applies the deferential abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 46, 128 S. Ct. 586, 591, 594 (2007).  In reviewing for reasonableness, we first consider whether the

district court committed any significant procedural error and then whether the sentence is substantively unreasonable in light of the relevant § 3553(a) factors and the totality of the circumstances.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  The party challenging the sentence has the burden to show it is unreasonable.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

As to procedural reasonableness, Everhart contends that the district court did not adequately explain its reasons for imposing a life term of supervised release. In deciding the appropriate length and conditions of a supervised release term, the district court considers certain factors set forth in 18 U.S.C. § 3553(a).[3]  18 U.S.C. § 3583(c).  Under our precedent, the district court is not required to address each § 3553(a) factor on the record but must adequately explain the chosen sentence. United States v. Livesay, 525 F.3d 1081, 1090 (11th Cir. 2008); see also 18 U.S.C. § 3553(c).  Generally, when the sentence is within the advisory guidelines range, "the district court is not required to give a lengthy explanation for its sentence if the case is typical of those contemplated by the Sentencing Commission." Livesay, 525 F.3d at 1090.

---

[3] Specifically, the relevant factors the district court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence, protect the public and provide the defendant with needed educational or vocational training or medical care; (3) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution. See 18 U.S.C. § 3583(c) (cross-referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7)).

Here, the district court adequately explained the chosen sentence, including the supervised release term, which was within the advisory guidelines range of five years to life for Everhart's underlying felony offense. See U.S.S.G. § 5D1.2(a), (b)(2) (providing that the length of a supervised release term for a sex offense is not less than five years and "may be up to life"). The district court stated that it had considered the parties' statements and the information in the violation report and that a sentence within the advisory guidelines range was appropriate. After Everhart objected to the sentence, the district court provided further explanation, citing Everhart's demonstrated unwillingness to cooperate with his probation officers and to comply with supervised release conditions that were imposed based on the seriousness of his underlying sex offense. The district court's explanation was sufficient, and Everhart has not shown his life term of supervised release is procedurally unreasonable.

We also cannot say that the supervised release life term is substantively unreasonable. Everhart's life term of supervision is within both the statutory range and the advisory guidelines range for his underlying sex offense. See 18 U.S.C. § 3583(k); U.S.S.G. § 5D1.2(b)(2). We ordinarily expect a sentence within the advisory guidelines range to be reasonable. Talley, 431 F.3d at 788. Furthermore, the policy statement to U.S.S.G. § 5D1.2(b) recommends the statutory maximum term of supervised release for sex offenders like Everhart. See U.S.S.G.

9

§ 5D1.2(b), p.s.  This Court has acknowledged that § 5D1.2(b)'s policy statement "is consistent with Congress's intention [reflected in 18 U.S.C. § 3583(k)] to punish sex offenders with life terms of supervised release because of the high rate of recidivism."  Pugh, 515 F.3d at 1199.

Moreover, the nature of Everhart's violations justified the district court's decision to impose a life term of supervision.  Everhart's underlying sex offense—using a computer to persuade, induce, entice, and coerce a minor to engage in sexual activity—was a serious one.  Some of the supervised release conditions that Everhart violated were designed in particular to keep him from engaging in similar conduct, such as the special conditions prohibiting his unauthorized use of a computer with Internet access and his possession of pornography.  Through his six violations, Everhart demonstrated an unwillingness and inability to abide by the conditions of his supervised release.  Not only did Everhart repeatedly lie to his probation officers about his relationship to Brannon, whom he knew was a convicted felon, but he also coached Brannon to lie to them as well.  Under the circumstances, the district court reasonably concluded that a life term of supervised release was warranted to protect the public from recidivism and deter future criminal conduct.

Everhart's claim is that a life supervised release term is too large an increase from his original twenty-year supervised release term.  However, a new supervised

release term following revocation does not have to conform to the original supervised release term.  See Pla, 345 F.3d at 1315.  Notably, this was Everhart's second revocation in less than two years, the first occurring after he failed to participate in court-ordered sex offender treatment.  Given that Everhart's second revocation involved intentionally deceiving his probation officers to circumvent his supervised release conditions, the district court's decision to impose the recommended, maximum life term upon the second revocation was not substantively unreasonable.[4]

**AFFIRMED.**

---

[4] Everhart does not appear to claim expressly that his nine month prison term should be subtracted from his life supervised release term.  However, there is no requirement to subtract time served in prison from a life term of supervised release imposed upon revocation of supervised release.  See United States v. Crowder, 738 F.3d 1103, 1105 (9th Cir. 2013); United States v. Cassesse, 685 F.3d 186, 191 (2d Cir. 2012); United States v. Rausch, 638 F.3d 1296, 1302-03 (10th Cir. 2011).