[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12683
Non-Argument Calendar
_____

D.C. Docket No. 2:06-cr-14011-DLG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN PAUL EVERHART, II,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 13, 2020)

Before ROSENBAUM, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

After the Defendant-Appellant John Paul Everhart, II, violated the

conditions of his supervised release for the fifth time, the district court revoked his

supervised release term and sentenced him to 18 months' imprisonment, followed by no more than 120 days in a halfway house facility and a life term of supervised release.  On appeal, Everhart challenges the procedural and substantive reasonableness of his term of imprisonment.  After careful review, we affirm.

## I.  BACKGROUND

### A.    Original Sentence and Supervised Release Conditions

In 2006, Everhart pled guilty to using a computer to persuade, entice, and coerce a minor to engage in sexual activity, a Class B felony, in violation of 18 U.S.C. § 2422(b).  United States v. Everhart, 562 F. App'x 937, 938 (11th Cir. 2014) (unpublished).  On January 18, 2011, Everhart finished his 60-month prison sentence and began his 20-year supervised release term.  Id.

Everhart's supervised release conditions required him to attend sex offender treatment, complete written monthly reports, answer truthfully all of his probation officer's inquiries, and work regularly at a lawful occupation.  Id.  The conditions forbade him from violating any laws, possessing or using any controlled substances, associating with convicted felons without permission, possessing materials depicting minors or adults engaged in sexually explicit conduct, and possessing or using a computer containing an internet modem without permission.  Id.  The conditions also required Everhart to notify his probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

2

**B.    Prior Supervised Release Violations and Revocations**

In April 2011, Everhart first violated his supervised release conditions when he failed to participate in court-ordered sex offender treatment. Id. In May 2011, the district court revoked his supervised release and imposed a five-month term of imprisonment, followed by a 234-month (19.5-year) term of supervised release. Id. The district court ordered that all remaining provisions of the original judgment remained in effect. Id. at 938-39.

Between September 2011 and June 2013, Everhart violated his supervised release conditions for the second time when he: (1) made a false statement to his probation officer that a 22-year-old female whom he wished to live with was his cousin; (2) knowingly associated with the female, who was a convicted felon, without permission; (3) twice failed to answer truthfully his probation officer's inquiries about the female; (4) possessed 27 DVDs containing adult pornography; and (5) possessed or used a computer with internet access, without permission, to visit online chatrooms and meet female prison inmates. Id. at 939-40.

In September 2013, the district court revoked Everhart's supervised release and imposed a nine-month term of imprisonment, followed by a life term of supervised release. Id. at 940. The district court imposed many of the same supervised release conditions, emphasizing that Everhart was to comply with all

sex offender registry requirements.  The district court warned that Everhart was "'not able to do or say whatever [he thought he] want[ed] to say or do whatever [he] want[ed] to do,'" and that he would face additional sanctions if he did not abide by his probation officer's directives.  Id. (alteration in original).  On appeal, Everhart challenged his life term of supervised release as procedurally and substantively unreasonable, and this Court affirmed.  Id. at 940-42.

Between March and April 2015, Everhart violated his supervised release conditions for the third time when he: (1) associated and lived with a convicted felon; (2) failed to truthfully answer inquiries from his probation officer about his convicted-felon roommate and the ownership of their residence; (3) failed to submit two monthly reports; (4) possessed adult pornography on his cell phone; (5) accessed the internet via his cell phone without permission; and (6) violated the law by failing to report all of his email addresses to the sex offender registry office. In July 2015, the district court revoked Everhart's supervised release and imposed a ten-month term of imprisonment, followed by a life term of supervised release. As conditions of his supervised release, Everhart was prohibited from committing any crimes, possessing a firearm or other dangerous devices, and possessing a controlled substance, in addition to all previously imposed conditions.

In March 2016, Everhart violated his supervised release conditions for the fourth time when he: (1) failed to report his change of address; (2) associated with

a convicted felon; and (3) violated the law by threatening that convicted felon.  In June 2017—after over a year of litigation while Everhart remained in custody—the district court revoked Everhart's supervised release, sentenced him to time served, and reinstated a life term of supervised release.  In addition to each of his previously imposed supervised release conditions, the district court ordered that Everhart submit to GPS monitoring.

In July 2018, the probation office notified the district court that Everhart had been charged with: (1) committing aggravated assault; and (2) failing to report to his probation officer that he was arrested and questioned by law enforcement.  A magistrate judge recommended a finding that Everhart did not violate his supervised release conditions but expressed concern about Everhart's "angry, combative, and abusive behavior" towards a state probation officer, Everhart's attorney, and other officers and authority figures.  In early March 2019, the district court adopted the magistrate judge's recommendation and reinstated Everhart's supervised release term.  In addition to each of his previously imposed supervised release conditions, the district court ordered that Everhart live with his parents and continue anger management therapy.

## C.    Current 2019 Supervised Release Revocation on Appeal

On March 26, 2019—less than a month after his supervised release term was reinstated—the probation office charged Everhart with three violations: (1) testing

5

positive in a urine sample for cocaine and amphetamine on March 15; (2) failing to work regularly at a lawful occupation since February 1; and (3) failing to participate in anger management counseling since January 10. Everhart admitted to all three violations. The magistrate judge recommended a finding that Everhart violated his supervised release based on the three violations. The district court noted no objections, adopted the magistrate judge's recommendation, and revoked Everhart's supervised release. The district court then held two hearings about the sentence, and the parties filed briefs.[1]

**D.    Initial Revocation Sentencing Hearing**

At the initial revocation hearing, the parties agreed that Everhart had committed Grade C supervised release violations and that he had a criminal history category of I, which yielded an advisory guidelines range of three to nine months' imprisonment.[2] The statutory maximum for Everhart's supervised release revocation sentence was three years' imprisonment and a life term of supervised release.

---

[1]The district court judge who conducted Everhart's 2019 revocation sentencing hearings was the same judge who had conducted Everhart's initial sentencing, each of his supervised release revocations, and each of his prior revocation sentencings.

[2]A Grade C supervised release violation, the least serious category, is defined as "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." U.S.S.G. § 7B1.1(a)(3); see also id. § 7B1.1(b) (providing that, where there are multiple violations, the applicable violation grade is determined by the violation with the most serious grade).

The government argued for an upward variance to 24 months' imprisonment, followed by a life term of supervised release, based on the 18 U.S.C. § 3553(a) factors. The government highlighted: (1) Everhart's history and characteristics; (2) his repeated supervised release violations; (3) his disrespect for the law, the court, and his probation officer; (4) his failure to be deterred from criminal conduct despite having his supervised release revoked four times previously and being sentenced to a collective 27 months on top of his original 60-month prison sentence; (5) the need to deter violations of others on supervised release; and (6) the need to protect the public. The government pointed out, and the probation officer confirmed, that the probation office had paid for Everhart to live in a residential motel to get him out of homelessness and joblessness and that Everhart abused this situation by failing to maintain employment, refusing to participate in anger management counseling, housing two women in the motel, and using cocaine and amphetamine. Additionally, the probation officer stated that Everhart rarely took responsibility for his own actions, did not wait very long post-release before committing new violations, and showed an unwillingness to comply with the district court's orders. The probation officer also recommended a sentence "well above" the advisory guidelines range.

Everhart argued that the § 3553(a) factors did not warrant an upward variance to a term of 24 months' imprisonment and requested a sentence at the low

end of the advisory guidelines range.  He highlighted that: (1) he had admitted guilt and accepted responsibility for his violations; (2) none of his violations involved any activity with minors; (3) he was employable and could contribute to society with his training as a chef; (4) he could be a law-abiding citizen; and (5) he had "faced terrible odds" as a homeless and jobless registered sex offender who had no financial means and had to wear a GPS tracker.  While he had prior difficulty accepting his life term of supervised release, Everhart now requested "the opportunity to prove that he can follow supervision and be productive in society with the possibility that this will be recognized [and the court would reconsider his supervised release term] at some point."  Everhart asked for a fresh start.

After the district court expressed its concern over Everhart's drug violation, Everhart personally explained his drug use, multiple other violations, joblessness, and homelessness.  First, Everhart stated that this was his first time ever using drugs and promised that he would never do drugs again.  Second, Everhart claimed that his drug use was the only time he had done something illegal during his supervised release.  He asserted that, each time he got in trouble for something— like associating with female prisoners and watching adult porn—he stopped doing it.  Third, Everhart alleged that, after living in his car for months, he worked a job and paid to live in a hotel until his probation officer reported him because he was not allowed to live at that hotel.  Everhart alleged that he then returned to living in

8

his car for months at a time and that only at this point did his probation officer set him up in the motel for two weeks. Everhart also alleged that, thereafter, he unsuccessfully attempted to apply for other jobs, largely due to his inability to access the internet, and that his probation officer was aware of his difficulties. Everhart explained that he was unable to function in current society under his supervised release conditions. The district court responded that it was concerned because Everhart had been before the court and had his supervised release revoked four times and "ha[d] difficulty accepting responsibility."

## E.    Final Revocation Sentencing Hearing

At the final revocation sentencing hearing in July 2019, the district court indicated that it had reviewed the parties' written briefs, reiterated that the advisory guidelines range was three to nine months' imprisonment, and noted the government's standing request for an upward variance to 24 months' imprisonment "based on the number of revocations we've had in this case." The district court emphasized that, despite having his supervised release revoked four times and serving several additional revocation sentences, Everhart had not been deterred from further violations.

The district court heard the parties' continued arguments. The government referred to its previous arguments, including "the [§] 3553 factors that [it] addressed [in its brief]." The government added that—because Everhart "basically

did what he wanted, when he wanted to, with whom he wanted, and with what substances he wanted"—a longer sentence was required to promote respect for the law and deterrence for both him and similarly-situated defendants. The government pointed out that, if Everhart demonstrated that he could behave, he could later petition the court to shorten his period of supervised release.

Everhart reiterated his prior arguments that: (1) none of his violations affected minors in any way; (2) many of his violations could be explained by the fact that he was angry and frustrated about being in a "desperate situation"—being homeless, without funds or a driver's license, and subject to GPS monitoring; (3) he would behave now because he understood that his life term of supervised release was lawful; (4) he was a skilled chef who could contribute to society; and (5) he had difficulties applying to jobs without being able to use the internet. Everhart again addressed the district court himself, acknowledging that he made a mistake in doing drugs but pointing out that it was only one time and that he took responsibility for his actions. He also expressed his frustrations with the amount and severity of his supervised release conditions and the sex offender rules, his inability to be independent under those conditions and rules, the extreme consequences of not following those conditions and rules, his difficulties with his probation officer, and his own lack of self-determination. Everhart asked the district court to give him an opportunity to prove himself.

The district court rejected Everhart's assertion that he had thought his supervised release term was illegal, as Everhart had confirmed at each prior revocation sentencing hearing that he had no further objections. As to Everhart's homelessness frustrations, the district court responded that Everhart "got in trouble" even when the probation office gave him housing. As to Everhart's joblessness frustrations, the district court stated that Everhart could work with the probation office to use its approved computer to apply for jobs. And, as to Everhart's pleading that he only used drugs once, the district court determined that once was "too many." It appeared to the district court that Everhart was a smart man who understood his situation and yet repeatedly chose to violate his supervised release conditions five times instead of just following the rules.

Even so, the district court suggested that a halfway house could ease Everhart's transition back into society. Both the probation officer and Everhart pointed out that they were unaware of any suitable local halfway houses that accepted sex offenders and offered the necessary supervision and treatment programs. The district court responded that the probation office needed to explore more options and that the parties could later petition the court for relief if no options were available.

Before pronouncing Everhart's sentence, the district court stated that it had "carefully considered the statements of all parties and the information contained in

11

the violation report."[3]  Ultimately, the district court determined that "a sentence above the guideline range is appropriate for the reasons stated previously; the four [prior] violations" plus the instant "revo[cation] [of] this supervised release."  The district court sentenced Everhart to 18 months' imprisonment, followed by no more than 120 days in a halfway house facility (so that Everhart could matriculate back into society after his prison term) and a life term of supervised release.  The district court ordered that Everhart was subject to each of his previously imposed supervised release conditions, emphasizing that he was prohibited from committing any crimes and possessing any controlled substances.

When the district court asked Everhart if he had any objections to the findings of fact or the manner in which the sentence was pronounced, he objected "on the grounds that the sentence imposed is greater than that necessary."  The district court noted the objection and added, "Mr. Everhart, you're 52 years old.  This ought to be getting a little old for you.  I hope you can get back on the right track, sir.  I have my doubts.  I may be seeing you again; I hope not, at least under these circumstances."

This is Everhart's appeal.[4]

---

[3]The district court did not expressly mention the § 3553(a) factors.

[4]Everhart is scheduled to be released on March 17, 2020.  See Federal Bureau of Prisons, Find an Inmate, No. 75537-004, https://www.bop.gov/inmateloc/, (last visited Feb. 4, 2020).

## II. DISCUSSION

Everhart argues that his 18-month term of imprisonment imposed upon his fifth supervised release revocation is unreasonable.[5]  "We review the sentence imposed [by the district court] upon the revocation of supervised release for reasonableness."  United States v. Vandergrift, 754 F.3d 1303, 1307 (11th Cir. 2014) (quotation marks omitted and alteration in original).  Generally, we review the reasonableness of a sentence under a deferential abuse-of-discretion standard using a two-step process.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  First, we examine whether the district court committed any significant procedural error, such as failing to consider the § 3553(a) factors or failing to explain adequately the chosen sentence.[6]  Id.  Then, we consider whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances.  Id.  Everhart, as the party challenging his sentence, bears the burden of showing that his sentence is unreasonable.  Id. at 1189.

---

[5]Because in this appeal Everhart raises no arguments challenging his life term of supervised release, he has abandoned any such challenge.  In any event, this Court already affirmed his life term of supervised release.  See Everhart, 562 F. App'x at 940-42.

[6]The § 3553(a) factors include, of relevance: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public from the defendant's future crimes; (5) the need to provide the defendant with correctional treatment in the most effective manner; (6) the kinds of sentences available; (7) the advisory guidelines range; and (8) any pertinent sentencing guidelines policy statement.  18 U.S.C. § 3553(a)(1)-(5).

## A.    Procedural Reasonableness

Everhart argues that the district court procedurally erred by failing to adequately explain the chosen sentence because the court mentioned only his previous supervised release violations and never articulated its consideration of the § 3553(a) factors.  Because Everhart did not object to the procedural reasonableness at the time of his sentencing, we review this claim on appeal for plain error.[7]  See Vandergrift, 754 F.3d at 1307.  Under the plain error standard, this Court will not disturb a district court's ruling challenged for the first time on appeal unless there is (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id.

If the district court determines that a sentence outside of the advisory guidelines range is warranted, it must consider the extent of the deviation and ensure a sufficiently compelling justification supports the degree of the variance.  Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007).  "[A] major departure should be supported by a more significant justification than a minor one."  Id. at 50, 128 S. Ct. at 597.

Nevertheless, the district court need not incant specific language or articulate

---

[7]The government submits that we should review this new claim of error under the plain error standard, and Everhart has not filed a reply brief opposing the government's position.

its consideration of each § 3553(a) factor, so long as the record as a whole reflects the district court's consideration of the § 3553(a) factors.  United States v. Bonilla, 463 F.3d 1176, 1181-82 (11th Cir. 2006).  While Everhart focuses on the district court's failure to explicitly mention the § 3553(a) factors, this is not dispositive.  See United States v. Dorman, 488 F.3d 936, 944 (11th Cir. 2007).  Rather, when this occurs, we look to the record to see if the district court did, in fact, consider the relevant factors.  See id.  When pronouncing its chosen sentence, the district court is required only to set forth enough to satisfy this Court that it considered the parties' arguments and had a reasoned basis for exercising its own legal decisionmaking authority.  United States v. Carpenter, 803 F.3d 1224, 1232 (11th Cir. 2015); see Gall, 552 U.S. at 50, 128 S. Ct. at 597 (providing that the district court must provide an explanation for its chosen sentence that "allow[s] for meaningful appellate review" and "promote[s] the perception of fair sentencing").

Here, the record as a whole shows that the district court did not plainly err in its consideration of the § 3553(a) factors or its explanation of Everhart's sentence. While the district court did not expressly articulate that it had considered the § 3553(a) factors, it did articulate prior to pronouncing its sentence that it had considered the parties' oral arguments, the parties' written briefs, and the information in the violation report.  See Dorman, 488 F.3d at 944.

Importantly, in the various arguments before the district court, the parties

15

had discussed the majority of the § 3553(a) factors—namely: (1) the nature and seriousness of Everhart's supervised release violations, including that he had committed a drug offense but not any crimes against minors; (2) his history and characteristics, including his repeated violations, homelessness, joblessness, and combativeness; (3) his seeming disrespect for the law, the court, and various authority figures; (4) the need to specifically deter Everhart from continuing to violate his supervised release conditions; (5) the need to generally deter future supervised releasees from committing violations; (6) the need to protect the public from Everhart's future violations and crimes; (7) the need to provide Everhart appropriate correctional treatment while giving him the necessary tools to secure employment and comply with his supervised release conditions; and (8) Everhart's advisory guidelines range.  The district court also heard Everhart's allocutions highlighting many of these same factors.

Moreover, at both hearings, the district court judge—who had presided over Everhart's original 2006 sentencing as well as his five prior revocation proceedings—explicitly articulated the factors it found to be most compelling.  The district court focused on Everhart's advisory guidelines range, his current drug violation, the number and frequency of his supervised release violations and revocations, his failure to be deterred by his prior revocation sentences, his difficulty accepting responsibility, and the need for his sentence to help him

16

matriculate back into society.  The district court also explained its rejection of each of Everhart's alternative arguments.  Thus, while the district court stated, just before pronouncing Everhart's sentence, that an above-guidelines-range sentence was warranted based on "the four [prior] violations" plus the instant "revo[cation] [of] this supervised release," the record illuminates that the district court considered many more § 3553(a) factors and based its sentence on numerous facts relating to those factors.

Everhart also takes issue with the district court's alleged failure to acknowledge two particular § 3553(a) factors—the kinds of sentences available and the sentencing guidelines policy statements.  Although the district court did not consider any pertinent guidelines policy statements, the record belies Everhart's assertion that it did not consider the kinds of sentences available given that it expressly discussed with the parties, and ultimately ordered, community confinement at a halfway house if one was available.[8]  See U.S.S.G. § 5F1.1 ("Community confinement may be imposed as a condition of . . . supervised release."); id. § 5F1.1, cmt. n.1 ("'Community confinement' means [in pertinent

---

[8]Everhart acknowledges the district court's imposition of a term at a halfway house but discredits that aspect of his sentence because, as he says it, the parties indicated to the district court that Everhart, as a sex offender, would be ineligible for any local halfway houses.  More precisely, however, the record shows that the probation officer was unsure if there were any local halfway houses that would accept Everhart, and the district court expressly considered this potential issue and stated that the parties could petition the court for relief if halfway housing ultimately was unavailable for Everhart.

part] residence in a . . . halfway house[.]").  Even so, the district court was not required to explicitly discuss these particular factors.  See Bonilla, 463 F.3d at 1181-82; United States v. Irey, 612 F.3d 1160, 1194-95 (11th Cir. 2010) (en banc) (explaining that the district court need not discuss each individual factor on the record).

In sum, Everhart has not shown that the district court plainly erred, let alone abused its discretion, in its consideration of the § 3553(a) factors or in explaining his sentence.  See Vandergrift, 754 F.3d at 1307; Pugh, 515 F.3d at 1190.

**B.    Substantive Reasonableness**

Everhart argues that his 18-month prison sentence—which is double the top of the advisory guidelines range of nine months—is substantively unreasonable.

Under the abuse-of-discretion standard, we will not vacate a sentence on substantive reasonableness grounds unless "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  Irey, 612 F.3d at 1190 (quotation marks omitted).  We will not "set aside a sentence merely because we would have decided that another one is more appropriate."  Id. at 1191.  Rather, we ensure only that the district court's sentence is a reasonable one.  Id.  "A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable

18

sentence." United States v. Stanley, 739 F.3d 633, 656 (11th Cir. 2014). Moreover, a district court is entitled to attach great weight to one factor over others, and the weight it attaches to any individual factor is committed to its sound discretion. United States v. Rosales-Bruno, 789 F.3d 1249, 1254 (11th Cir. 2015).

Here, Everhart's 18-month prison sentence, while double the top of the three-to-nine-month advisory guidelines range, is still only half of the three-year (or 36-month) statutory maximum sentence. See 18 U.S.C. § 3583(e)(3) (providing that the maximum supervised release revocation sentence for a defendant whose underlying conviction was a Class B felony is three years); Stanley, 739 F.3d at 656; Everhart, 562 F. App'x at 938; see also Gall, 552 U.S. at 59, 128 S. Ct. at 602 ("Moreover, the Guidelines are only one of the factors to consider when imposing a sentence[.]" ).

We recognize that Everhart argues that his sentence is substantively unreasonable because: (1) his current and prior supervised release violations were all minor Grade C violations; (2) most of his violations were technical violations of supervised release conditions that are extremely harsh and difficult to comply with; (3) his remaining violations stemmed from brief lapses of judgment while trying to manage his life as a registered sex offender plagued by homelessness, joblessness, lack of internet access, and other barriers; and (4) his 18-month prison sentence does nothing to ameliorate those barriers. The problem for Everhart, however, is

19

that the district court was well within its substantial discretion to weigh more heavily other considerations, like: (1) Everhart's history and characteristics of repeatedly violating the conditions of his supervised release and his difficulties in accepting responsibility; (2) the seriousness, nature, and circumstances of his instant supervised release violations, including his drug use during a time that the probation office provided him housing; (3) the strong need for deterrence given Everhart's failure to be deterred by his four prior revocation sentences, totaling to over 27 months' additional imprisonment; and (4) attempting to provide Everhart with effective correctional treatment by ordering him to a 120-day term at a halfway house, if such an option existed for sex offenders. See 18 U.S.C. § 3553(a)(1)-(2); Rosales-Bruno, 789 F.3d at 1254. Accordingly, Everhart has failed to show that "the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of [this] case." See Irey, 612 F.3d at 1190 (quotation marks omitted).

## III. CONCLUSION

Because Everhart has failed to show any procedural or substantive unreasonableness, we affirm his 18-month prison sentence.

**AFFIRMED.**